623 F.2d 1054
 24 Fair Empl.Prac.Cas. 20, 23 Empl. Prac.
Dec. P 31,173
 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, an unincorporated
association, et al., Defendants,
I.L.A. Local 1576, Defendant-Appellee,
I.L.A. Local 851, Defendant-Appellant.
 
 No. 79-3587.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 13, 1980.
 Moore & Laurence, Robert M. Moore, Houston, Tex., for Local 851.
 Sidney L. Ravkind, Houston, Tex., for Local 307.
 Joel M. Cohn, EEOC, App. Div., Washington, D.C., for plaintiff-appellant.
 Simpson & Burwell, Inc., James P. Simpson, Texas City, Tex., for ILA Local 1576.
 Bryan F. Williams, Jr., Galveston, Tex., for amicus curiae.
 Appeals from the United States District Court for the Southern District of Texas.
 Before FAY, KRAVITCH and RANDALL, Circuit Judges.
 FAY, Circuit Judge:
 
 
 1
 Appellants Equal Employment Opportunity Commission (E.E.O.C.), International Longshoremen's Association (I.L.A.) Local 851, and I.L.A. Local 307 seek reversal of a district court order excluding I.L.A. Local 1576 from the merger of the remaining I.L.A. deep sea locals[1] in Galveston, Texas. There are four deep sea locals in Galveston: Local 307 is composed of white longshoremen, Locals 329 and 851 are composed of black longshoremen, and Local 1576 has a predominantly Mexican-American membership. The district court ordered the merger of the white and black locals but excluded the Mexican-American local from the merger. Notwithstanding the earnest efforts and good intentions of then District Judge Garza,[2] the clear mandate of this court in E.E.O.C. v. International Longshoremen's Association, 511 F.2d 273, 280 (5th Cir.), cert. denied, 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975), requires us to reverse the order of the district court excluding Local 1576 from the merger and remand the case with directions that all four Galveston locals be merged.I. A Very Brief[3] History of the Case
 
 
 2
 Over a decade ago the United States filed an action under Title VII of the Civil Rights Act of 1964,[4] alleging that the International Longshoremen's Association (I.L.A.), the South Atlantic and Gulf Coast District of the I.L.A., and thirty-seven local general cargo longshoremen's unions chartered by the I.L.A., were engaged in a pattern or practice of discrimination on grounds of race, color, and national origin. The United States alleged that the defendants maintained local unions, hiring halls, and gangs which were classified and segregated on grounds of race and national origin, resulting in the denial of equal working opportunities to black and Mexican-American longshoremen. The relief sought included a court-ordered merger of the segregated locals, and the discontinuance of separate locals, hiring halls and gangs based upon race and national origin.
 
 
 3
 After hearing several days of testimony in the cause and reviewing the hundreds of exhibits filed, Judge Garza found
 
 
 4
 that the Defendants have chartered and still maintain locals on a segregated basis, that the prevalent rule of dividing the work fifty-fifty between the White and Negro locals violates Title VII of the Civil Rights Act of 1964, because it deprives longshoremen, be they Black or White, Anglo, Mexican-American or Negro, equal working opportunities depending on which group is in the majority in the different ports, and that this will be a continuing violation in the future.
 
 
 5
 United States v. International Longshoremen's Association, 334 F.Supp. 976, 981 (S.D.Tex.1971). Despite his findings that the maintenance of segregated locals deprived on longshoremen of equal employment opportunities, Judge Garza refused to order the consolidation of the locals in each port. Rather, the court held that the violations of Title VII "can be fully corrected by the abolishment of separate hiring halls and the establishment of a common hiring hall" and by the adoption of common seniority classifications "on a port by port basis for each defendant local union which does the same kind of work . . . ." Interlocutory Decree, Supp. Record, vol. I, at 700-11. The E.E.O.C. appealed the court's refusal to merge the locals, and this court reversed, holding that "the edict of 42 U.S.C. § 2000e-2(c)(2) (Title VII) cannot be satisfied in the present case by measures short of the merger in each particular port of the racially segregated locals within that port." E.E.O.C. v. International Longshoremen's Ass'n, 511 F.2d 273, 280 (5th Cir.), cert. denied, 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975), (Thornberry and Godbold, JJ., specially concurring). The cause was remanded with directions to merge the I.L.A. locals within each Texas gulf port.
 
 
 6
 On remand, the district court conducted several evidentiary hearings for the sole purpose of determining whether I.L.A. Local 1576 should be required to merge with the other three deep sea locals in Galveston.[5] In a Memorandum and Order dated October 1, 1979,[6] the district court examined the historical development, business activities, seniority systems, and employee benefit plans of the four locals in question.[7] The court next considered the three alternatives before it.
 
 
 7
 First, the Court can merge the four locals together under a uniform seniority system. Second, it can order a merger excluding Local 1576 but requiring those members of Local 1576 who have dual seniority to choose between Locals 307 and 1576. This election would result in the elimination of the member's seniority in one of the locals. Third, the Court could order the merger excluding Local 1576 and allowing its members to retain their dual seniority.
 
 
 8
 Supp. Record, vol. I, at 813.
 
 
 9
 The court rejected the first alternative, the merger of all four locals, because the difference in the seniority systems of each local would place members of Local 1576 at the bottom of the seniority list. If the merged local were willing to grant a year's seniority to any longshoreman who had qualified in his own local and who had been available for longshore work, regardless of the hours actually worked, the first alternative would have been acceptable. Locals 307, 329 and 851 refused however, to accept this proposal, and because of this attitude, the court refused to merge all four locals. Supp. Record, vol. I, at 814.
 
 
 10
 The second alternative considered by the court was also rejected because of its discriminatory effect on Local 1576, leaving only the options of merging Locals 307, 329 and 851 while keeping Local 1576 separate. In support of this alternative, the court pointed out "that unlike the situation in the other locals, Local 1576 has not discriminated against any racial group. Although the great majority of members and work gang foremen are Mexican-American, its membership is open to anyone. There is no evidence that members of Local 1576 have ever discriminated against any individuals or refused admittance to their local." Supp. Record, vol. I, at 815. Finding the third alternative to be most equitable, the court ordered the merger of Locals 307, 329 and 851; Local 1576 was excluded from the merger and removed as a defendant in the case. The E.E.O.C. and Locals 307 and 851 now appeal the order of merger excluding Local 1576. Relying on the law of the case set forth in this court's prior opinion, 511 F.2d 273, we reverse and remand the cause with directions to merge all four Galveston locals.
 
 II. The Law of the Case
 
 11
 It is well established that a decision of a legal issue by an appellate court establishes "the law of the case" which must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to such issue, or (3) the prior decision was clearly erroneous and would work manifest injustice. White v. Murtha, 377 F.2d 428, 431-32 (5th Cir. 1967); see Morrow v. Dillard, 580 F.2d 1284, 1289-1290 (5th Cir. 1978); Schwartz v. NMS Industries, Inc., 575 F.2d 553, 554-555 (5th Cir. 1978). The doctrine does not reach questions which were not decided in a former proceeding, but does comprehend "things decided by necessary implication as well as those decided explicitly." Carpa, Inc. v. Ward Foods, Inc., 567 F.2d 1316, 1320 (5th Cir. 1978) (emphasis in original). Under the "law of the case" rule, the trial and appellate courts are bound by any findings of fact or conclusions of law made by the appellate court in a prior appeal of the case at issue. De Tenorio v. Lightsey, 589 F.2d 911, 917 (5th Cir.), cert. denied, 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979).
 
 
 12
 The district court here did not follow the law of the case as established by this court in the prior appeal. This court held that Title VII required "the merger in each particular port of the racially segregated locals within that port." 511 F.2d at 280. Judges Godbold and Thornberry, specially concurring, explained that such merger is required whenever the district court finds (as was done here) that segregated locals have caused unequal employment opportunity. Id. There is no question that this court's prior mandate comprehended the Galveston locals. The district court opinion singled out Galveston Locals 1576 and 329 as prime examples of locals whose members had been denied equal employment opportunity due to segregation. 334 F.Supp. at 980-81. Moreover, its interlocutory order requiring merger of hiring halls referred specifically to Galveston Locals 307, 329, 851, and 1576. See Interlocutory Decree, Supp. Record, vol. I, at 700-11. When this court reversed and remanded the case, holding that there was no discretion to refuse merger, it clearly contemplated that the four deep sea locals in Galveston would be merged. This message was clearly understood; on remand Judge Garza told counsel he would listen to arguments why Local 1576 should not be merged, "but I just know that the Fifth Circuit is going to send it back to me." Supp. Record, vol. III, at 35. His prophecy is correct.
 
 
 13
 The district court failed to find an applicable exception to the law of the case doctrine to justify its deviation from this court's mandate. There is no contention that controlling authority since this court's 1975 decision dictates a contrary decision of the law applicable to this case; nor did the district court presume to hold that this court's decision was clearly erroneous. Further, the evidentiary hearings conducted since this court's ruling have not produced any new or substantially different evidence which would justify the exclusion of Local 1576 from the Galveston merger.
 
 
 14
 In view of this court's prior holding that segregated locals must be merged whenever they result in unequal employment opportunity, the only new evidence that could have justified excluding Local 1576 from the merger would have been evidence that the local is no longer segregated or that its segregated existence does not deprive any group of equal employment opportunity. The evidence demonstrated the contrary. Local 1576, still chartered as a union for Mexican-Americans, remains functionally segregated. See, e.g., Record, vol. II, at 22-24, 41-44, 73. In 1971 the district court found that black longshoremen "have to be referred out of a (black) local hiring hall"; that "White longshoremen are referred out of a White longshoremen's hiring hall"; and that exceptions to this practice "have been few and far between." 334 F.Supp. at 978. See also 511 F.2d at 277 n.8. Based on evidence presented at the September 1979 hearing on remand, the district court specifically found that this practice has not changed: few black longshoremen obtain employment through either white Local 307 or Mexican-American Local 1576, and few white or Mexican-American longshoremen obtain employment through the black locals (329 and 851). Referring to the tradition among the Galveston locals that members of each race are expected to seek work only with the local whose membership is composed of that race, the court commented:
 
 
 15
 I don't doubt . . . at all that when there are some Blacks there in 1576 . . . the Mexican-Americans have the first crack at it. If I made any other findings, I would be a liar.
 
 
 16
 Record, vol. II, at 217. Although the trial court may have been correct in stating that Local 1576 never actively discriminated against members of any racial group, the fact remains that as one of four segregated Galveston longshoremen's locals, Local 1576 has been part of a system which operates to discriminate against people because of race and national origin. That Local 1576 may not have intended to discriminate does not justify its exclusion from the order of merger mandated by this court. See 511 F.2d at 278 (Title VII does not look to the intention of those who segregate). See also International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).
 
 III. The Struggle with Seniority
 
 17
 A reading of the district court's October 1979 Memorandum and Order reveals that Local 1576 was excluded from the merger order primarily because the court believed a total merger would unfairly penalize members of Local 1576 by placing them at the bottom of the common seniority list. The loss of seniority, the court feared, would deny work to Local 1576 longshoremen, and thus deprive them of the "fruits of their labors." Supp. Record, vol. I, at 814. It was noted that this consequence could be prevented by slotting Local 1576 members into the merged system according to the seniority earned under that local's more lax standards. This alternative was rejected, however, because of objections by the other locals.
 
 
 18
 In fact, the court's fear of disadvantaging Local 1576 may well have been unwarranted. While seniority in 1576 is determined on a different basis than it is for the other Galveston locals Local 1576 has a 300 hour per year standard, the other locals a 700 hour per year standard evidence in the record suggests that (1) in practice many Local 1576 longshoremen may be able to satisfy the higher standard, and (2) many black longshoremen may have less seniority than Local 1576 members regardless of the standard employed. See, e.g., Record, vol. II, at 191-95, 214.
 
 
 19
 In any case, the prospect that blacks and whites may benefit at the expense of Mexican-Americans from the elimination of discrimination does not, in itself, justify permitting the discrimination to continue. As the district court recognized in 1971, "(w)hile the Civil Rights Act of 1964 was passed to aid Negroes and other minorities, it was passed to help Whites as much as Negroes, if their civil rights are being violated . . . ." 334 F.Supp. at 979. At that time the district court also noted the "terrific problem" of merging seniority lists. Id. at 981. However, in holding that a complete merger was required this court explicitly rejected the view that such problems justify the continued segregation of the locals. 511 F.2d at 280. The law is well settled that relief under Title VII cannot be denied simply because the interests of some employees will be negatively affected; otherwise "there will be little hope of correcting the wrongs to which the Act is directed." Franks v. Bowman Transportation Co., 424 U.S. 747, 775, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444 (1976); Vogler v. McCarty, Inc., 451 F.2d 1236, 1238-39 (5th Cir. 1971). Rather, to eradicate the consequences of unlawful discrimination, the court "must be free to deal equitably with conflicting interests of . . . employees in order to shape remedies that will most effectively protect and redress the rights of the . . . victims of discrimination." Vogler v. McCarty, Inc., 451 F.2d at 1238-39. Under these principles, the finding by the district court that a merger of all four locals would disadvantage the Mexican-Americans of Local 1576 was not a sufficient reason to deny the merger.
 
 IV. Conclusion
 
 20
 The outcome of this appeal is predetermined under the long-standing doctrine of law of the case. This court, in the prior appeal of this case, ordered that all four Galveston deep sea locals be merged. There have been no intervening changes in the law or the circumstances to justify any deviation from that command. We are compelled to once again remand with directions to merge all four Galveston locals. In so holding, we reaffirm the prior opinion of this court in E.E.O.C. v. International Longshoremen's Ass'n, 511 F.2d 273 (5th Cir.), cert. denied, 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975).
 
 
 21
 REVERSED and REMANDED.
 
 
 
 [1]
 The deep sea locals handle loading and unloading of deep sea vessels carrying cargo involved in foreign trade. See Supp. Record, vol. I at 810; Brief for Appellant E.E.O.C. at 2 n. 2
 
 
 [2]
 Now United States Circuit Judge
 
 
 [3]
 A detailed review by us of the facts of the case would be superfluous, since the prior decisions of this court and of the district court more than adequately chronicle the progress of the lawsuit. See E.E.O.C. v. International Longshoremen's Ass'n, 511 F.2d 273 (5th Cir.), cert. denied, 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975); United States v. International Longshoremen's Ass'n, 334 F.Supp. 976 (S.D.Tex.1971)
 
 
 [4]
 The suit was originally brought by the Attorney General under 42 U.S.C. § 2000e-6(a), which gave him jurisdiction when he had reasonable cause to believe that a person or group of persons were engaged in a pattern or practice of resistance to the enjoyment of any of the rights secured by the Act. Effective as of March, 1974, this jurisdiction was transferred to the Equal Employment Opportunity Commission by 42 U.S.C. § 2000e-6(c); § 2000e-6(d) continued without abatement all suits brought by the Attorney General by substituting the Commission as the party. E.E.O.C. v. International Longshoremen's Ass'n, 511 F.2d 273, 274 n. 3 (5th Cir. 1975)
 
 
 [5]
 The record and briefs in the case indicate that the evidentiary hearings were held in response to a prior motion by the defendant locals to exclude Local 1576 from the interlocutory decree of the district court merging hiring halls and seniority plans but not the locals themselves. In support of their motion to exclude, the locals argued that Local 1576 had not been included with the others as a deep sea local in contracts with the West Gulf Maritime Association; that Local 1576 had not been covered by the joint welfare, vacation, and pension plans of the other locals; that Local 1576's charter limited its work to the loading and unloading of bananas and green fruit whereas the other locals were limited to loading and unloading general cargo; and that members of Local 1576 had less seniority than members of the other locals and would therefore be prejudiced by a merger. See Supp. Record, vol. I, at 700-01, 722-33; Brief for Appellant E.E.O.C. at 6-7. The interlocutory decree was reversed by this court, 511 F.2d 273, but the district court, on remand, continued to consider defendants' motion to exclude Local 1576
 
 
 [6]
 The unpublished Memorandum and Order appears in the Supp. Record, vol. I, at 809-17
 
 
 [7]
 The court found, inter alia, that
 (l)ocals 307, 329 and 851 are now and have always been operated as general deep sea locals. Local 1576 has never been affiliated with the general deep sea locals. Its work jurisdiction is more limited in that it is involved in the loading and unloading of bananas and green fruit. Locals 307, 329 and 851 have been and are now signatories to deep sea contracts between themselves and the South Atlantic and Gulf Coast District of the I.L.A. and the West Gulf Maritime Association. Local 1576 has never been a signatory nor been named in the Deep Sea Local contracts. Locals 307, 329 and 851 are also covered under a guaranteed annual income (GAI) plan with West Gulf Maritime Association. Local 1576 has never been and is not now covered under that plan, predominately because the work hour requirements of Local 1576 do not meet the minimum amount necessary to qualify under the GAI Plan. Locals 307, 329 and 851 have been covered in a welfare, vacation and pension plan in which Local 1576 has never been included.
 Local 1576 did not become an active local until the early 1960's, many years subsequent to the founding of the other three Galveston locals. Thus, the early 1960's was the starting point for Local 1576's seniority system.
 Additionally, although Locals 307, 329 and 851 have required at lease a minimum of 700 hours per year to obtain seniority, Local 1576 has never been able to demand such an amount. In the formative years of Local 1576's operation, business was extremely slow. In fact, there was a period in the early 1960's when Local 1576 had no business whatsoever. At first, a longshoreman could obtain seniority in Local 1576 if he loaded or unloaded one ship per year. That number was later raised to 20 ships per year and finally to the present requirement of 300 hours per year. Nonetheless, it was stated at the hearing that many of the 247 members of Local 1576 have worked more than 300 hours per year. Mr. Ramirez stated that Local 1576 maintains complete time records of all its employees.
 Although Local 1576 did experience a number of lean years, its members worked to develop and strengthen its position with regard to the banana and green fruit trade. The members of Local 1576 have built up a good reputation in their specialized business and have established themselves in the banana and green fruit market.
 It was also elicited at the hearing that a member of one local could seek work in another local and obtain seniority under the latter's system as well as his own. This procedure allows those longshoremen who cannot obtain work in their own local to go to another to earn their wages. Nonetheless, there has been a tradition in the Galveston locals that members of each race are expected to seek work only with the local whose membership is composed of that race.
 Traditionally, black longshoremen sought work in Locals 329 and 851. Members of the Anglo Local 307 would historically seek other work in Local 1576, and members of Local 1576 would in turn go to Local 307. Because of this, 43 members of Local 1576 have seniority in both their own local and Local 307.
 Supp. Record, vol. I, at 811-12.