**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael Kelly ROBINSON,**
**Defendant-Appellant.**

**No. 81–7671.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1982.

Kermish, Labovitz, Marcus, Brazier & Rosenberg, Stephen A. Kermish, David W. Davenport, Atlanta, Ga., for defendant-appellant.

Julie F. Carnes, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD, Chief Judge, and ANDERSON, Circuit Judges, and HOFFMAN,* District Judge.

R. LANIER ANDERSON, III, Circuit Judge:

In this airport search case, appellant Michael Kelly Robinson was convicted in a nonjury trial for possession of cocaine with intent to distribute, in violation of 21 U.S. C.A. § 841(a)(1) (West 1981). Robinson argues that agents of the Drug Enforcement Administration ("DEA") seized the cocaine from him at Atlanta's Hartsfield International Airport in violation of his Fourth Amendment rights. A prior panel of the former Fifth Circuit remanded Robinson's first appeal to the district court for a new suppression hearing with respect to several issues. *United States v. Robinson*, 625 F.2d 1211, 1221 (5th Cir. 1980). On remand, the magistrate conducted a new evidentiary hearing on the motion to suppress, entered more detailed findings of fact, and again recommended the denial of the motion to

---

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

suppress. The district court agreed, adopting some of the magistrate's findings and making further findings of its own. We reverse.

## I. FACTS

On September 21, 1978, at the Atlanta airport, DEA agents Paul Markonni and Michael Dorsett were observing passengers departing from a nonstop flight from Miami, Florida. One of the passengers, Robinson, attracted the agent's attention by appearing to be nervous, perspiring, and, unlike other passengers, looking around the arrival area. Robinson carried only a standard-size briefcase. After first walking toward the main terminal, Robinson returned to the airline gate agent to inquire about his connecting flight to Birmingham, Alabama. After receiving directions for this flight, Robinson at various times stared at Markonni, walked to the wrong departure gate, spoke to another gate agent, and, with some hesitation, walked toward and then away from the security checkpoint of the main terminal.

Markonni then approached Robinson. Markonni observed that Robinson's airline ticket, which was strapped to his briefcase, had no baggage claim checks or staple holes, indicating that Robinson had no luggage other than his briefcase. Markonni then identified himself as a federal officer, displayed his credentials showing that he was an agent with the DEA, and asked if he could speak with Robinson and if he could see Robinson's ticket. Markonni did not physically contact Robinson. Robinson removed the ticket from the briefcase and handed it to Markonni.

Markonni observed that the ticket bore the name of "Michael Reilly." Markonni then asked Robinson what his name was. Robinson responded, "Michael Robinson," and claimed that he was using the ticket of someone else who could not make the trip.

Markonni asked Robinson if he had any identification. Robinson handed Markonni a driver's license bearing the name of "Michael Robinson."

Markonni then stated that he was a federal narcotics agent looking for drugs coming into the airport. When Markonni asked whether Robinson carried any narcotics on his person or in his briefcase, Robinson asserted that he was not. Markonni asked Robinson whether he would consent to a search of his person and briefcase. Robinson responded affirmatively. Although the magistrate found that the agent did ask Robinson whether he was carrying drugs, he found that Markonni never told Robinson that he "had reason to believe" that Robinson was carrying drugs, one issue that prompted the prior panel to remand this case. 625 F.2d at 1217.[1]

Markonni then asked Robinson whether he preferred to have the search conducted in a private downstairs office, so as to avoid conducting the search in public, or to have the search where Markonni and Robinson were standing. Robinson stated his preference for the office and, at the same time, placed his briefcase on a nearby table, opened it, and asked whether Markonni wanted to search it there. Markonni replied that if Robinson was willing to go to the office, he could search the briefcase there. Robinson closed the briefcase and proceeded with Markonni to the office. Markonni testified that on the way to the office, he and Robinson spoke about the weather in Miami.

It is undisputed that Markonni retained Robinson's airline ticket, which was needed for his continuing flight to Birmingham, during the interrogation in which Markonni asked for Robinson's name and then for identification (*i.e.*, the driver's license). Markonni could not recall precisely when he returned the driver's license and ticket ex-

---

1. Although this fact was found by the magistrate, the district court declined to adopt it, preferring instead to decide the motion to suppress on the assumption that Robinson's different version was correct. Rather than remand to the district court for review, we have re-

viewed this finding ourselves in the interest of judicial economy, and we conclude that the magistrate's finding is adequately supported in the record. *United States v. Berry,* 670 F.2d 583, 603 n.25 (5th Cir. 1982) (en banc) (citation omitted).

cept that he knew he returned them before they started walking to the office. He testified that his "property procedure" at the time was to return such tickets before walking back to the office.

Upon arriving at the office, Markonni, Robinson and another officer went to an adjacent room. Markonni again requested Robinson to allow a search of his person and briefcase. Reading from a card he carried, Markonni said

> You have the right to allow or refuse to allow a search to be made of your person and personal property that you have with you. Do you understand?

Robinson replied affirmatively. Upon searching Robinson, Markonni discovered cocaine hidden inside a paraplegic diaper that Robinson wore. The time between Markonni's initial encounter with Robinson and the discovery of the cocaine was no more than eight minutes.

## II. ISSUES

This case presents four issues: (1) whether the law of the case doctrine precludes our review of the prior panel's conclusion that Robinson voluntarily consented to accompany Markonni to the airport office, (2) whether *United States v. Berry*, 670 F.2d 583 (5th Cir. 1982) (en banc), applies retroactively to Robinson's case, (3) whether Robinson voluntarily consented to go to the airport office; and (4) whether the discovery of the cocaine was the tainted fruit of an illegal arrest.

## III. LAW OF THE CASE

■ The prior panel held that "Robinson's consent to accompany Markonni to the airport police precinct office was voluntary." 625 F.2d at 1218. Robinson urges that we should reconsider this ruling. The government contends that we should adhere to the prior panel's conclusion under the law of the case doctrine. We conclude that we must reconsider the question of whether Robinson voluntarily consented to go to the airport office.

■ Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case. *United States v. Burns*, 662 F.2d 1378, 1384 (11th Cir. 1981); *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir. 1981); *EEOC v. International Longshoremen's Association*, 623 F.2d 1054, 1058 (5th Cir. 1980), *cert. denied*, 451 U.S. 917, 101 S.Ct. 1997, 68 L.Ed.2d 310 (1981); *De Tenorio v. Lightsey*, 589 F.2d 911, 917 (5th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 59, 62 L.Ed.2d 39 (1979). However, the law of the case doctrine does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice. *EEOC v. International Longshoremen's Association*, 623 F.2d at 1058; *United States v. McClain*, 593 F.2d 658, 664 (5th Cir.), *cert. denied*, 444 U.S. 918, 100 S.Ct. 234, 62 L.Ed.2d 173 (1979); *Morrow v. Dillard*, 580 F.2d 1284, 1292 (5th Cir. 1978); *Schwartz v. NMS Industries, Inc.*, 575 F.2d 553, 554–55 (5th Cir. 1978); *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir. 1967). In our view, the first of these exceptions applies to this case.

In deciding the issue of Robinson's consent to go to the airport office, the prior panel relied upon what has turned out to be, after the proceedings on remand, an erroneous view of the facts. Quoting from *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), and inserting bracketed material to demonstrate the perceived identity between the facts of *Mendenhall* and the facts of this case, the prior panel stated:

> As in *Mendenhall*, Robinson "was not told that [he] had to go to the office, but was simply asked if he would accompany the officer[ ]. There were neither threats nor any show of force. [Robinson] had been questioned only briefly, and [his] ticket and identification were returned to [him] before [he] was asked to accompany the officers."

625 F.2d at 1218 (quoting *United States v. Mendenhall,* 446 U.S. at 557–58, 100 S.Ct. at 1878–79). From this passage, it is clear that the prior panel assumed that Robinson's ticket and driver's license were returned to him before he was asked to accompany the officers to the airport office. This interpretation of the facts could readily have been implied from the findings of the magistrate that were before the prior panel. *See* 625 F.2d at 1213. However, after conducting a new evidentiary hearing on remand, as mandated by the prior panel, the magistrate entered more detailed findings of fact, "focus[ing] on the circumstances surrounding the initial encounter." 625 F.2d at 1217. These findings indicate that Markonni may have retained the items up to the point that he and Robinson began to walk to the airport office. In light of this new evidence and its effect on the issue of consent, we decline to adhere to the prior panel's ruling on Robinson's consent to go to the office.

## IV. RETROACTIVITY

■ Before addressing the merits of the consent issue, we consider the government's arguments against the retroactive effect of *United States v. Berry,* 670 F.2d 583 (5th Cir. 1982) (en banc),[2] a case examining the Fourth Amendment issues involved in airport stops. The government argues that *Berry* represents such a "change in prior Fifth Circuit law" that the decision should apply only prospectively. We conclude that the Fourth Amendment aspects of *Berry* apply retroactively, at least to all convictions not final at the time the decision was rendered.[3]

In a recent case, the Supreme Court reexamined the principles for determining the retroactive effect of a decision construing the Fourth Amendment. *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). The *Johnson* Court held that, "subject to [certain enumerated] exceptions ..., a decision ... construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." *Id.* at ——, 102 S.Ct. at 2594. The *Johnson* Court advanced only two exceptions to this rule in the Fourth Amendment area. The first of these actually is only a possible exception to the general rule of retroactivity because the *Johnson* Court declined to decide it. Because the *Johnson* case arose on direct review, the Court concluded that it "need not address the retroactive reach of [the Court's] Fourth Amendment decisions to those cases that still may raise Fourth Amendment issues on collateral attack." *Id.* at —— at n.20, 102 S.Ct. at 2594 n.20. We note that Robinson's appeal here, like Johnson's, arises on direct review of his conviction. The second exception involves analysis of the "three narrow categories of cases," in which the retroactivity question is "clearly controlled" by the Court's pre-*Johnson* retroactivity precedent. *Id.* at ——, ——, 102 S.Ct. at 2587, 2594.

The first category involves a decision that "merely applie[s] settled precedent to new and different factual situations ...." —— U.S. at ——, 102 S.Ct. at 2587. Such decisions include those cases that decide an issue expressly left open in prior cases. *Id.* at ——, 102 S.Ct. at 2587. As to such cases, the Court observed that retroactivity is a "foregone conclusion" raising "no real question." *Id.*

The second category of decisions are those that "expressly declare[ ] a rule of criminal procedure to be a 'clear break with the past,'" *id.* at ——, 102 S.Ct. at 2587 (quoting *Desist v. United States,* 394 U.S. 244, 248, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248 (1969)), "announce an entirely new and un-

---

**2.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir. 1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of the Unit B en banc court of the former Fifth Circuit. *Compare Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of former Fifth Circuit handed down prior to the close of business on September 30, 1981).

**3.** For the definition of a "final" conviction, see *United States v. Johnson,* —— U.S. ——, —— n.8, 102 S.Ct. 2579, 2583 n.8, 73 L.Ed.2d 202 (1982).

anticipated principle of law," *id.* —— U.S. at ——, 102 S.Ct. at 2588, or "cause[ ] 'such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replace[s] an older one' " *id.* at ——, 102 S.Ct. at 2588, (quoting *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 498, 88 S.Ct. 2224, 2234, 20 L.Ed.2d 1231 (1968)). Such "clear break" decisions include those cases that explicitly overrule clear past precedent or that disapprove an established practice previously sanctioned in other cases. *Id.* —— U.S. at ——, 102 S.Ct. at 2588. Such cases, the *Johnson* Court observed, "virtually compel[ ] a finding of nonretroactivity." *Id.* at ——, 102 S.Ct. at 2587.

The third category involves decisions that "a trial court lack[s] authority to convict or punish a criminal defendant in the first place." *Id.* at ——, 102 S.Ct. at 2587. As examples of such decisions, the *Johnson* Court cited cases involving a penalty against assertion of the Fifth Amendment privilege against self-incrimination, double jeopardy, and the Eighth Amendment. *Id.* The *Johnson* Court observed that "full retroactivity [is] a necessary adjunct" to such cases. *Id.*

In deciding the retroactivity of *Berry,* we need consider only whether *Berry* involves a "clear break" with past precedent, and thus falls within the second of the three categories discussed above. If not, then *Berry* merits retroactive effect (1) because even if *Berry* fell into the first and third categories discussed above, those categories lead to a conclusion of retroactivity, and (2) absent the applicability of one of the three categories, a decision construing the Fourth Amendment applies retroactively to all convictions not yet final at the time of the decision.

In our view, *Berry* does not represent a clear break with the past, of the sort that the *Johnson* Court discussed. The *Berry* case was decided in the context of "inconsistent precedent" in the former Fifth Circuit, and in "the absence of definitive guidance from the Supreme Court." 670 F.2d at 594. In such a context, it is difficult to characterize *Berry* as an "abrupt and fundamental shift in doctrine." Yet, despite the lack of consistency and guidance, *Berry* drew heavily from Supreme Court and former Fifth Circuit precedent in an attempt to provide a comprehensive blueprint for analyzing the Fourth Amendment issues involved in airport stops. *Berry's* sensitive and exhaustive treatment of these issues flowed directly from a careful reading and reflection on existing precedent, with particular attention to the special problems of airport stops. Finally, we note that a recent decision of this court has applied *Berry* retroactively, although not explicitly addressing the retroactivity issue. *United States v. Elsoffer,* 671 F.2d 1294, 1297 (11th Cir. 1982) ("This case gives us an opportunity to apply [the *Berry* ] decision"). Accordingly, we hold that *United States v. Berry,* 670 F.2d 583 (5th Cir. 1982) (en banc), applies retroactively, at least to all convictions that were not yet final at the time of the *Berry* decision, and at least with respect to the Fourth Amendment issues involved in *Berry.*

## V. CONSENT TO GO TO THE OFFICE

▮ Having addressed the law of the case and retroactivity issues, we now consider the merits of whether Robinson voluntarily consented to accompany Markonni to the airport office. The general test for consent is as follows:

> Whether consent . . . was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Berry,* 670 F.2d at 596. Some of the factors relevant to the consent inquiry are: "voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse consent to the search, [and] the defendant's education and intelligence. . . . " *United States v. Phillips,* 664

F.2d 971, 1023–24 (5th Cir. 1981) cert. denied, —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (footnotes omitted). In the context of an airport stop "exceptionally clear evidence" is required to establish voluntary consent to go to an airport office. *United States v. Berry,* 670 F.2d at 598. Further, the government bears the burden of showing voluntary consent. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) (quoting *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968)); *United States v. Goldstein,* 635 F.2d 356, 362 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981); *United States v. Bowles,* 625 F.2d 526, 536 (5th Cir. 1980); *United States v. Juarez,* 573 F.2d 267, 273 (5th Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978). In addition, we apply the clearly erroneous test to the district court's determination that Robinson voluntarily consented. *United States v. Robinson,* 625 F.2d 1211, 1218 (5th Cir. 1980). Applying the *Berry* test, we conclude that the government has not carried its burden of showing, by exceptionally clear evidence, that Robinson consented to accompany Markonni to the airport office. We hold that the district court was clearly erroneous in finding consent, and furthermore that it is inappropriate to remand to the district court for further findings because the instant record would not permit a finding that Robinson voluntarily consented to go to the office for a search; any such finding would be clearly erroneous. *Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982).

An important factor in our decision is the length of time that Markonni retained Robinson's ticket and driver's license. Precisely when Markonni returned these items is unclear. The district court found that Markonni returned the items to Robinson at least before he and Robinson began to walk to the airport office. A remand for a more exact finding on this issue would be useless, however, because Markonni repeatedly stated at the second suppression hearing that he simply could not remember when he returned the items to Robinson. Markonni also testified that he could have retained them while asking Robinson whether he carried drugs, and whether Robinson would consent to go to the airport office for a search. He testified that his "property procedure" at the time was to return the tickets before walking back to the office. Because the government bears the burden of establishing consent by exceptionally clear evidence, we must resolve this issue against the government and assume that Markonni did not return the items until after Markonni had elicited Robinson's consent to go to the office.

Under this assumption, and the totality of the circumstances of this case, we conclude that the government has not carried its burden of proof that Robinson did voluntarily consent to go to the office. First, as discussed earlier, we must conclude that Markonni retained the ticket, which Robinson needed to continue from Atlanta to Birmingham, and the driver's license, at least through the point at which Markonni elicited Robinson's consent to accompany Markonni to the airport office. *United States v. Berry,* 670 F.2d at 597, 603 n.26; *see United States v. Elsoffer,* 671 F.2d 1294, 1297 (11th Cir. 1982). Second, Markonni stated that he was a narcotics agent looking for drugs and directly asked Robinson whether he was carrying drugs. Such statements, suggesting that the agents' investigation had focused on Robinson, easily could have induced Robinson to believe that his refusal to go to the office would lead only to formal detention. *See United States v. Elsoffer,* 671 F.2d at 1298; *United States v. Berry,* 670 F.2d at 597. More specifically, we note that both the *Berry* court and the *Elsoffer* panel placed heavy reliance on the agents' asking the *Berry* defendants whether they carried drugs, in concluding that the defendant did not voluntarily consent to go to the airport office. *United States v. Berry,* 670 F.2d at 604; *United States v. Elsoffer,* 671 F.2d at 1298.

We recognize that this case also includes factors that tend to support, rather than to negate, a finding of consent. First, Robin-

son is a college graduate with some graduate school training. Second, Robinson did appear to cooperate with Markonni to some extent by spontaneously opening his briefcase on the airport concourse and asking whether Markonni wanted to search it there. However, this cooperation lends more support to an implied consent to search the brief case (which of course contained no drugs), and less to any implication of voluntary consent to go to the office for a search (where Robinson obviously knew his person would be searched making discovery of drugs very likely). Third, Robinson was not subjected to any physical force or restraint, or to any blatant show of authority other than Markonni's identifying himself with his credentials. However, this was also true in *Berry* and *Elsoffer.* Fourth, Robinson was not placed under formal arrest until the discovery of cocaine on his person. This too was true in *Berry* and *Elsoffer.*

After careful consideration of the totality of the circumstances here, we conclude that *Berry* mandates reversal of the instant conviction. Like the defendant in *Berry*, Robinson was approached by Markonni who identified himself as a narcotics agent. Robinson and Berry were both traveling under an alias. It is true that Berry affirmatively lied to the agent about his identity and traveling companion, whereas Robinson never lied but explained that he had borrowed a friend's ticket. Like Berry, Robinson was expressly asked by the agent whether he was carrying drugs. When Robinson was asked in the concourse to consent to the search, he, like Berry, was not advised of his right to decline. Neither was advised of his rights until after they

had "consented" to go to the private office for a search; only after reaching the office were the rights read to them. Both Berry and Robinson were seized before the agent elicited their consent to go to the office for a search.[4] We acknowledge Berry's having been caught in an affirmative lie might reflect more coercion than does the mere alias factor here. However, this is more than offset by the coercion in the instant case inherent in Markonni's retention of Robinson's driver's license and his through ticket to Birmingham while interrogating him and eliciting his consent to go to the office for a search. We conclude that there is more evidence of coercion in the instant case than was present in *Berry.*

When Markonni informed Robinson that he was a narcotics agent looking for drugs passing through the airport and expressly asked Robinson whether he was carrying drugs, such statements "intimate that an investigation had focused on a specific individual [and] easily could induce a reasonable person to believe that failure to cooperate would lead only to formal detention." *United States v. Elsoffer*, 671 F.2d at 1298, quoting from *United States v. Berry*, 670 F.2d at 597. "Under the circumstances involved in an airport stop, after such a question Elsoffer, and any other reasonable person [*i.e.*, Robinson], hardly would have felt that he was, if he so desired, free not to go to the lounge." 671 F.2d at 1298.

Similarly, Markonni's asking for Robinson's consent to the search while holding his license and the ticket he needed for his flight to Birmingham would "strongly indicate that a reasonable person would believe his freedom restrained."[5] *United States v.*

4. *Elsoffer* requires a finding that Robinson was seized during the interrogation by Markonni. In *Elsoffer*, we held "that a seizure occurred when agent Matthewson retained the ticket while asking for further identification." 671 F.2d at 1297. Here, the retention of Robinson's ticket during Markonni's interrogation coupled with the agent's express question as to whether Robinson was carrying drugs mandates a finding that a seizure had occurred before Markonni elicited Robinson's consent to go to the office for a search.

5. The government accuses the *Berry* court of confusing the separate issues (1) of consent to go to the airport office, and (2) of whether a seizure has occurred. Our discussion of the consent issue is subject to the same alleged default. However, failing to appreciate the nature of the consent at issue, the government fails to comprehend the relevance of the factors involved in the seizure issue to the question of consent to go to the office. We recognize that the test for whether a seizure has occurred is whether a reasonable person would feel free to leave. *United States v. Berry*, 670 F.2d at 595.

*Berry,* 670 F.2d at 603 n.26; *see also United States v. Elsoffer,* 671 F.2d at 1297.

Under these circumstances, we conclude that the government has failed to carry its burden of adducing "exceptionally clear evidence of consent . . . [to] overcome . . . [the] presumption that a person requested to accompany an agent to an office no longer would feel free to leave." *United States v. Berry,* 670 F.2d at 598. We conclude that *Berry* and *Elsoffer* require a reversal of Robinson's conviction. It would be inappropriate to remand to the district court because a finding that Robinson voluntarily consented to go to the office for a search would be clearly erroneous.

## IV.  ILLEGAL ARREST AND FRUIT OF THE POISONOUS TREE

▮ Without consent, the forced walk to the office was tantamount to an arrest, and thus required probable cause. *United States v. Berry,* 670 F.2d at 604. The government does not contend that the agents had probable cause at the point of the walk to the office, choosing instead to rely on Robinson's consent. Accordingly, we hold that Robinson was illegally arrested. *See United States v. Hill,* 626 F.2d 429, 432, 436–37 (5th Cir. 1980) (defendant arrested at moment of request to go to airport office; because there was no consent to go to office and because the government never contended that probable cause existed at time of request, arrest was illegal).

The cocaine later discovered upon a search of Robinson's person must be suppressed as the tainted fruit of the illegal arrest unless Robinson's consent to the search in the airport office was both (1) voluntary, and (2) not the product of the illegal detention. The factors considered in this inquiry are (a) the temporal proximity of the arrest and the consent to the search, (b) intervening circumstances, and (c) the purpose and flagrancy of the official misconduct. *Taylor v. Alabama,* —— U.S. ——, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); *Dunaway v. New York,* 442 U.S. 200, 218, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975); *United States v. Berry,* 670 F.2d at 604–05; *United States v. Robinson,* 625 F.2d at 1219–20. In holding that Robinson's consent in the office to the search of his person was voluntary, the prior panel disposed of the voluntariness prong of the attenuation test, and we see no reason to disturb that ruling. *United States v. Robinson,* 625 F.2d at 1218.

▮ However, the prior panel did not resolve the second prong of the test.[6] We conclude that the consent to the search was the product of the illegal arrest, and thus that the cocaine must be suppressed. First, the original consent to go to the office for a search was elicited without having warned Robinson of his right to decline to go to the office or to decline to agree to a search. Second, although Robinson was warned of his right to refuse to allow a search after reaching the private office, his consent

We also note that the test for consent is in part whether the consent was the product of express or implied coercion. *Id.* at 596. The consent at issue here is consent to go to the airport office, *i.e.,* consent to go from one place to another, specific place. Whether a reasonable person would have felt "free to leave," *i.e.,* free not to go to the office, seems relevant to whether he was expressly or impliedly coerced into agreeing to go to the office. Thus, because of the nature of the consent at issue, the factors here considered which are relevant to the seizure inquiry are also relevant to consent.

**6.** Neither the magistrate nor the district court made findings on this attenuation issue on remand from the first appeal. Although this issue is fact-sensitive, the determination must be

made in light of the distinct policies and interests of the Fourth Amendment, and accordingly the determination is one that we can appropriately make at the appellate level where the record is developed in sufficient detail. In *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), the Supreme Court resolved the attenuation issue in the absence of findings on the issue by the courts below, since the record was sufficient. *Accord Taylor v. Alabama, supra; United States v. Miller,* 608 F.2d 1089, 1102–03 (5th Cir. 1979). Similarly, the record in the instant case is ample, and we have no difficulty in concluding that Robinson's consent to the search was the product of his illegal arrest.

there must be deemed to have been given in the immediate circumstances of the arrest. Upon reaching the precinct office, Markonni asked Robinson and another officer to accompany him to an adjacent office, again requested consent for the search, and read Robinson his "rights" from a card. The magistrate found that less than eight minutes elapsed from the time of the initial encounter until after the search when Robinson was advised he was under arrest. Third, there were no substantial intervening events to purge the taint of the illegal arrest. In *Berry,* the two defendants were not only told that they were free to refuse consent to search, but were also told that they could consult an attorney and they were also allowed to discuss between themselves whether to consent and were invited to use the telephone to call an attorney. Unlike the defendants in *Berry,* Robinson was told only that he had a right to refuse to allow a search and was told that only after he had already consented initially. The Supreme Court has squarely held that *Miranda* warnings by themselves are not sufficient to attenuate the taint of an unconstitutional arrest. *Taylor v. Alabama, supra; Brown v. Illinois,* 422 U.S. at 602–03, 95 S.Ct. at 2261 (1975). There being no intervening event to attenuate the taint, and the consent having been given in the immediate circumstances of the illegal arrest, we conclude that the government has failed to carry its burden of showing that the taint of the illegal arrest has been attenuated. *Brown v. Illinois,* 422 U.S. at 604, 95 S.Ct. at 2262. Accordingly, we hold that the cocaine found on Robinson's person was sufficiently tainted by the illegal arrest to require its exclusion from evidence.

For the reasons discussed above, Robinson's conviction is

REVERSED.