Gregory Paul CAUCHON,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 86–5083.

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1987.

Theodore J. Sakowitz, Federal Public Defender, John C. Mattes, Asst. Federal Public Defender, Miami, Fla., for petitioner-appellant.

Leon B. Kellner, U.S. Atty., Miami, Fla., Linda Collins-Hertz, Richard K. Harris, Sonia Escobio O'Donnell, Andrea M. Simonton, Asst. U.S. Attys., for respondent-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Appellant Gregory Paul Cauchon challenges his conviction in district court of intentionally manufacturing a controlled substance, 3,4–methylenedioxyamphetamine (MDA), in violation of 21 U.S.C. § 841(a)(1). He contends that the lower court erred in (1) denying his motion to suppress evidence seized during the search

of his laboratory, and (2) allowing the government to introduce prejudicial evidence. He also claims that the evidence at trial was insufficient to support his conviction. Finding no merit in these allegations, we affirm the conviction.

## I. FACTUAL BACKGROUND

On October 5, 1982, the Drug Enforcement Administration (DEA) received information from a concerned citizen that controlled substances were being manufactured in a small laboratory at a warehouse known as the Lancau Corporation in Miami, Florida. The informant stated that the appellant, who ran the laboratory, was commuting to Miami from San Francisco in order to manufacture the drugs. On September 6, 1983, DEA Agent Howard Brady conducted a surveillance of the location and noticed that appellant received shipments of two immediate precursor compounds necessary to produce MDA. Also, Agent Brady claimed he heard the sound of glassware being used and the sound of an exhaust fan and stirring equipment. Other agents detected a strong odor of chemicals coming from the premises. Agent Brady and other members of the DEA executed a search warrant at the warehouse/laboratory on September 9, 1983. Inside, they found Cauchon and a fully equipped laboratory with hundreds of different chemical compounds. Appellant requested that the agents not destroy any of the equipment. The agents searched the laboratory and took samples of liquids, and portions of glassware and electrical equipment. The agents also seized laboratory records consisting of a green bound notebook and a yellow legal pad. Finally, 37 grams of MDA, equivalent to 370 doses, were found in three flasks.

Appellant was indicted for intentionally manufacturing MDA (Count I), and for possessing MDA with intent to distribute (Count II). Cauchon moved to suppress all physical evidence seized in the search. The court denied this motion. On February 3, 1984, the trial began. At the end of the government's case, the court acquitted the appellant of the possession count. Later, the court declared a mistrial as to the first count due to a hung jury.

When the case was retried on February 6, 1984, the defense called Vincent Cauchon (the appellant's father) who testified that he helped set up Lancau Corporation with his son. Mr. Cauchon's duties were to keep the company books. He also testified that Lancau Corporation was a legitimate business engaged in the manufacture of room deodorizers, cleaning products and waxes. Finally, he stated that appellant had promoted the room deodorizers in national magazines. On cross-examination, he testified that the only magazine he could recall advertising in was *High Times* magazine.

Next, the appellant testified that he has an undergraduate degree in pre-medical chemistry and that he was enrolled in a masters program at San Francisco State University in organic chemistry. He also testified that the Lancau Corporation marketed room deodorizers, cleaning products and waxes. Appellant claimed that he conducted research testing in his own lab to protect the patent interests of his discoveries and that he was currently experimenting with a new method of synthesizing a compound called N-ethyl-1-(3,4-methylenedioxyamphetamine)-2-amio propane (MDE), which avoided creating MDA as a by-product. He admitted that he had not written any details of this experiment in either of his notebooks.

On rebuttal, the government called Leslie Tucker, who testified that patrons purchased appellant's room deodorizers, removed the lid to the container and inhaled the contents. Next the government called Agent Harris who testified that *High Times* magazine was "known on the street as the Wall Street Journal of the drug field," or "the Sears Catalog of the drug field." (R. 3–131). Through Agent Harris, the government attempted to introduce two issues of *High Times* magazine into evidence. Over appellant's objections, the court allowed one issue of the magazine into evidence. On surrebuttal, appellant took the stand and testified that along with *High Times*, he had advertised his room

deodorizers in other national publications, namely: *Christopher Street, Alive* and *The Advocate.*

Eventually, the appellant was found guilty of intentionally manufacturing MDA. The court placed Cauchon on probation for three years with the requirement that he participate in a mental health program. The court also directed Cauchon to perform 150 hours of community service.

## II. THE SUPPRESSION MOTION

Appellant contends that the lower court erred in its denial of his motion to suppress all evidence seized at his laboratory. He claims that the warrant was illegal because the affidavit provided to the magistrate by Agent Brady contained (1) an informant's stale and uncorroborated tip, and (2) material misrepresentations by Agent Brady concerning the use of chemicals delivered to the Lancau Corporation. The reviewing court may not reverse the lower court's findings on a pre-trial motion to suppress unless they are clearly erroneous. *United States v. Gunn,* 428 F.2d 1057, 1060 (5th Cir.1970).[1] After considering both of appellant's arguments, we find that the district court was not clearly erroneous in its denial of appellant's motion to suppress.

### A. *The Informant's Tip*

According to the affidavit, drug enforcement agents received a tip from a confidential concerned citizen. The informant stated that appellant had been manufacturing controlled substances at his laboratory in Miami. Said informant also told the agents that appellant was commuting from San Francisco to Miami for the purpose of making narcotics. Furthermore, the informant gave the agents appellant's home address in San Francisco.

▇ Appellant points out that although the DEA agents received the tip on October 5, 1982, they did not apply for a search warrant until September 1983. Since this was a delay of nearly one year, appellant claims that the tip was stale and therefore the affidavit did not show any current probable cause. Determinations of timeliness as an element in probable cause must be made on a case by case basis. *Sgro v. United States,* 287 U.S. 206, 211, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932). "In general, the basic criterion as to the duration of probable cause is the inherent nature of the crime." *Bastida v. Henderson,* 487 F.2d 860, 864 (5th Cir.1973). This court has held that when the tip described a continuous course of illegal conduct, and the magistrate was not restricted to only the knowledge gained from the informant, a tip as old as six months was timely. *United States v. Williams,* 603 F.2d 1168, 1172 n. 4 (5th Cir.1979). Although the informer in this case alerted DEA agents to appellant's activities eleven months before the magistrate issued the search warrant, the agents had observed shipments of chemicals to the Lancau Corporation for several months. From this, the magistrate could conclude that appellant had been manufacturing MDA on a continuing basis. Therefore, the tip was not stale.

Appellant also claims that the informant's tip was uncorroborated, thereby failing to establish any probable cause. The standard for reviewing the legality of search warrants is outlined in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In that case, the rigid "two-pronged" test of requiring the affiant to disclose the informant's "basis of knowledge" and proof of the informant's "veracity" was replaced with a more general "totality of the circumstances" test.

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981.

had a "substantial basis for ... conclud[ing]" that probable cause existed. *Id.* at 238–39, 103 S.Ct. at 2332. *Illinois v. Gates* also emphasized the importance of corroborating the informant's hearsay statements by independent police work. *Id.* at 241, 103 S.Ct. at 2334.

■ In the case at bar, it was the DEA's corroboration of the concerned citizen's tip which gave the magistrate a substantial basis for concluding that MDA would be found in appellant's laboratory. Agent Brady confirmed that appellant was commuting from San Francisco to Miami, just as the tipster alleged. Furthermore, the informant gave DEA agents appellant's San Francisco address which was later confirmed. Finally, Brady concluded from his stake-out of the laboratory that appellant had purchased several chemical compounds which were precursors required for the manufacture of MDA. This extent of police corroboration was sufficient for the magistrate to determine that the appellant was illegally manufacturing MDA. Therefore, there was probable cause for the issuance of the search warrant.

### B. *Misrepresentations in the Affidavit*

Appellant also argues that Agent Brady enticed the magistrate into issuing a search warrant by listing numerous drugs shipped to the Lancau Corporation and then by misrepresenting their use as precursor compounds in the manufacture of MDA and LSD. In the affidavit, Agent Brady claimed that shipments of over ten different chemical compounds were delivered to the Lancau Corporation and that all of them were precursors, solvents and reagents necessary for the manufacture of MDA and LSD. At the suppression hearing, the appellant called an expert witness, Dr. Roach, a professor of chemistry at Miami-Dade Community College, who testified that only two of the listed chemicals

were actually precursors to the manufacture of MDA. Appellant then concluded that Agent Brady intentionally included the remainder of these compounds to lure the magistrate into issuing a search warrant.

■ In response to this, the court called William Beasley, a forensic chemist with the DEA. Beasley disagreed with Dr. Roach and testified that most of the chemicals listed could be used in the production of MDA. The court chose to give more weight to Beasley's testimony and found that there was no misrepresentation concerning the use of the chemicals listed in the affidavit. Since there was some plausible evidence in support of this finding, we may not conclude that the lower court was clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

### III. THE SUFFICIENCY OF THE EVIDENCE

Appellant claims that the evidence introduced by the government at trial was insufficient to support a conviction for unlawfully manufacturing MDA. He was convicted of violating 21 U.S.C. § 841(a)(1).[2] Therefore, there must have been sufficient evidence for a reasonable juror to find that appellant (1) knowingly *or* intentionally (2) manufactured MDA.

The standard of review is well settled in this circuit.

It is not necessary that the evidence include every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc),[3] *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct.

---

**2.** The relevant section states that:

"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, dis-

tribute, or dispense, a controlled substance."

**3.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as binding precedent all decisions of Unit B of the former Fifth Circuit.

2398, 76 L.Ed.2d 638 (1983). We must view the evidence in a light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Therefore, the question we must ask ourselves on review is "what is the best set of facts against appellant?" In other words, does the best set of facts for the government support a verdict of guilty beyond a reasonable doubt?

■ After a thorough review of the record in a light most favorable to government, it is clear that there was sufficient evidence to convict appellant of intentionally manufacturing MDA. Three hundred and seventy (370) dosage units of MDA were discovered in the laboratory of the Lancau Corporation. Appellant was an owner of Lancau Corporation and was present in the laboratory when DEA agents seized the controlled substance. Furthermore, appellant's educational background demonstrated that he had the ability to perform this manufacturing process.

The government, through cross-examination of appellant, used appellant's own testimony to convince the jury of his guilt. Appellant claimed that he was attempting to synthesize MDE without creating MDA as a by-product, and that he was using the Lancau laboratory to test his results in order to patent this new method. The government pointed out several facts which detract from the credibility of appellant's defense. First, appellant recorded no information in his journals concerning his new theory of synthesizing MDE. Second, DEA agents seized literature by other chemists in appellant's laboratory which demonstrated well-known methods of creating MDE with a MDA by-product. Most importantly, however, DEA agents found no testing equipment in the laboratory, suggesting that appellant was not experimenting with a new synthesis of MDE but was actually manufacturing MDA.

Other damaging evidence came from Dr. Roach (a defense witness) who testified that as a professional chemist, he would never take the chance of handling a controlled substance without a license. The jury could take this remark to mean that someone with appellant's background would realize the impropriety of having an unlicensed controlled substance in his laboratory. Finally, Leslie Tucker, a friend of the appellant, testified that patrons often removed the tops of appellant's room deodorizers and sniffed the contents.

It is clear that a reasonable juror could have disregarded appellant's and his father's testimony and could have found that appellant was guilty beyond a reasonable doubt. Therefore, based on the evidence alone and barring any other error, the conviction should stand.

## IV. THE HIGH TIMES MAGAZINE

Appellant claims that the lower court erred by allowing the government to introduce certain evidence which appellant asserts had little probative value and which highly prejudiced the jury against him. At trial, the defense called appellant's father, Vincent Cauchon, who testified that the Lancau Corporation was a legitimate and respectable outfit. Mr. Cauchon emphasized that the corporation was so aboveboard that it promoted its products (room deodorizers) through advertisements in national magazines. On cross-examination, Mr. Cauchon could recall only one of the magazines used for the advertisements, *High Times* magazine. On rebuttal, the government recalled Agent Brady and through him attempted to introduce a copy of *High Times* magazine. Appellant objected, claiming that this was a more recent issue of the magazine which did not contain the appellant's advertisement. He also claimed that the magazine's format had changed since appellant had advertised in it. Over appellant's objection, the court allowed the government to introduce the copy of *High Times* into evidence.

■ "[U]nder Federal Rule of Evidence 401, the trial court is granted broad discretion both on determining the relevance of the evidence to be admitted[4] and in deter-

---

**4.** Fed.R.Evid. 401 defines "relevant evidence" as · "evidence having any tendency to make the existence of any fact that is of consequence to

mining whether the probative value of such evidence outweighs any inherent prejudice to the defendant." *United States v. Hernandez-Cuartas,* 717 F.2d 552, 554 (11th Cir.1983). In this case, it is clear that the trial judge did not abuse his discretion. While discussing the introduction of the magazine at sidebar, appellant's counsel admitted that he had asked appellant's father about the magazine advertising in "an effort to give his business some credibility." (R. 3–132). Therefore, the door was open for the government to show what type of periodical *High Times* really is.[5] Appellant's main objection was that he had advertised in the magazine years before when its content was not as blatantly drug oriented. However, he failed to request a continuance in order to proffer any other less inflammatory issue of the magazine or any copy of the actual advertisement, and is now content with the general assertion that introducing this magazine into evidence was prejudicial. "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). "Unfair prejudice" cannot be simplistically defined as evidence having adverse effects on a party's case; rather, it is "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Grassi,* 602 F.2d 1192, 1197 (5th Cir.1979) (quoting Notes of the Advisory Committee on Proposed Federal Rules of Evidence, 28 U.S.C.A. Rule 403 at 102), *vacated,* 448 U.S. 902, 100 S.Ct. 3041, 65 L.Ed.2d 1131 (1980), *on remand,* 626 F.2d 444 (5th Cir.1980), *cert. denied,* 450 U.S. 956, 101 S.Ct. 1415, 67 L.Ed.2d 381 (1981). There was no "improper basis" for introducing the *High Times* magazine. Appellant opened the door by trying to show that his room deodorizers were advertised in respectable magazines. Therefore, the district court justifiably allowed the government to show the jury that promoting room deodorizers in *High Times* is quite different than promoting the same in *Good Housekeeping.*

 Appellant also claims that the court erred in allowing the *High Times* magazine to be brought back by the jury into their deliberations. The lower court did not abuse its discretion in sending the magazine back with the jury. The content of the magazine could only prejudice appellant by tending to rebut his witness' testimony that Lancau Corporation was a legitimate company which advertised in respectable national publications. It would not act as evidence that appellant was involved in growing marijuana or that he was involved in other illegal activities of which he was not even charged.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

the determination of the action more probable or less probable than it would be without the evidence."

5. *High Times* magazine's predominant thrust in its articles and advertisements is to advocate the use of recreational drugs.