UNITED STATES of America,
Plaintiff–Appellee,

v.

Yolanda CAMPBELL,
Defendant–Appellant.

No. 89–7877.

United States Court of Appeals,
Eleventh Circuit.

Jan. 7, 1991.

Robert Ramos, Hill & Ramos, El Paso, Tex., Philip H. Butler, Scott R. Talkington, Robison & Belser, P.A., Montgomery, Ala., for defendant-appellant.

Kent B. Brunson, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before CLARK, and BIRCH, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HENDERSON, Senior Circuit Judge:

Yolanda Campbell was convicted on one count of a two-count indictment after she entered a conditional plea of guilty in the United States District Court for the Middle District of Alabama. Count two of the indictment charged the defendant, along with two named codefendants,[1] with conspiracy to possess with the intent to distribute approximately 102.8 pounds of marijuana in violation of Title 21 U.S.C. § 846. Campbell filed a motion to suppress the evidence, alleging the discovery of the marijuana was the result of an illegal search and seizure by officers of the Montgomery Police Department. After hearing evidence at two separate hearings, the district court denied the motion to suppress. Thereafter, Campbell entered a plea of guilty reserving her right to appeal the district court's denial of the motion to suppress the evidence. We reverse.

## I Background

On March 8, 1989, agent Gregg Thompson of the Montgomery Police Department, Narcotics Division, received information from a confidential informant concerning the delivery to Montgomery of approximately 150 pounds of marijuana. The confidential informant related to Thompson that he had been working with a woman named "Yoli" who, accompanied by three armed Mexican males, would bring the marijuana to Montgomery. The following day, March 9, 1989, at approximately 10:55 P.M., the confidential informant told Thompson that a white-green Chevrolet pickup truck with a camper shell bearing Texas license plates would arrive in Montgomery via Highway 80 West between 11:30 P.M. and 1:00 A.M. The informant also stated that the vehicle would stop at the Union 76 Truck Stop on Southwest Boulevard. Thompson immediately notified his department of this information and proceeded to the truck stop.

Around 12:15 A.M. on the morning of March 10, 1989, a pickup truck matching the description provided by the confidential informant arrived at the Union 76 Truck Stop. Once the truck stopped, approximately six unmarked police cars and ten officers surrounded the vehicle. The ten officers in civilian clothes but wearing raid jackets approached the pickup with their weapons drawn. The appellant, her two small children and the two codefendants were ordered out of the truck, searched and arrested. At least one of the officers visually inspected the interior of the vehicle but found no contraband. The truck and the defendants were then taken to the police station. The two children were turned over to the local juvenile authorities.

At the police station the defendants were separated and questioned individually. At 1:27 A.M. the appellant, the owner of the vehicle, signed a consent to search the truck after Thompson began filling out an application for a search warrant. He never completed the application because Campbell signed the consent form.[2] Soon afterwards the officers brought in a narcotics-sniffing dog but this dog failed to detect any sign of illegal drugs in the truck. Confident that contraband was hidden somewhere in the truck, the department called for another trained dog owned by the Alabama State Patrol. At 2:55 A.M., not long after it arrived, the second dog picked up the scent of the marijuana near the rear bumper and alerted the officers. The officers removed the bumper and discovered a false bottom in the bed of the pickup where they found the marijuana.

## II Discussion

The denial of a motion to suppress the evidence is reviewed as a mixed question of law and fact. To overturn the denial of the motion, the appellant must show that the district court clearly erred in its findings of fact, but in the application of the law to these facts, an appellate court exercises *de novo* review. In reviewing a ruling on a suppression hearing, we must construe the

---

1. The codefendants, Miguel Ramirez and Ricardo Ramirez, are not parties to this appeal.

2. Campbell disputes that she voluntarily consented to the search but claims she only signed the consent form in the hope that the officers would stop questioning her after she had requested an attorney. ROA Vol. 2, pp. 89–90.

facts in the light most favorable to the party prevailing in the district court. *United States v. Alexander,* 835 F.2d 1406, 1408 (11th Cir.1988). Here the district court made findings of fact, applied its understanding of the law to those facts and concluded that there was probable cause for the police officers to search the appellant's pickup truck.

A search without a warrant based on probable cause is illegal, unless the government can show that it falls into one of those limited exceptions recognized by law. *Alexander,* 835 F.2d at 1408. One of the exceptions deals with the search of automobiles. Searches of automobiles may be conducted without a warrant if "(1) there is probable cause to believe the vehicle contains contraband or other evidence which is subject to seizure under the law, and (2) exigent circumstances necessitate a search or seizure." *Id.* at 1409. The reasoning behind this rule is to prevent vehicles from being easily moved out of the jurisdiction in order to thwart the detection efforts of law enforcement officers. Another justification for the rule is that passengers in the vehicle have a lesser expectation of privacy. *California v. Carney,* 471 U.S. 386, 392, 105 S.Ct. 2066, 2069–70, 85 L.Ed.2d 406, 413 (1985). Even so, the Supreme Court has emphasized that before a government agent can search a vehicle without a warrant "the overriding standard of probable cause" must be met. *Id.*

In determining if there was probable cause to arrest the defendants, the district court applied the totality of circumstances test articulated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In order to find probable cause at the time of the initial search and arrest of the defendants, the district court correctly concluded that the reliability of the informant was the primary ingredient in making that determination. The court noted that the government offered little evidence to show the past reliability of the confidential informant and that the "police had no independent information corroborating the informant's tip prior to stopping Campbell's pickup at the truck stop." Nevertheless

the court did find that the tip was reliable because the information provided by the informant was substantially correct. According to the court, the color of the truck, the license plate and the arrival time and location of the truck supplied sufficient indicia of probable cause. Citing two Eleventh Circuit cases, *Cauchon v. United States,* 824 F.2d 908 (11th Cir.) *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987) and *United States v. Amorin,* 810 F.2d 1040 (11th Cir.1987), the court said, "[i]n many situations, however, confirmation of details provided by a confidential informant, even innocent details, may give rise to probable cause." This reliance was misplaced because these cases are readily distinguishable from the case at bar. Cauchon appealed his conviction of intentionally manufacturing 3, 4–methylenedioxyamphetamine (MDA) in violation of 21 U.S.C. § 841(a)(1) on five grounds. *Cauchon,* 824 F.2d at 909–10. The issue there was whether the warrant was stale. Eleven months had elapsed from the time the Drug Enforcement Administration (DEA) agents received the information from the informant and the time the warrant was issued. *Id.* at 911. The district court correctly found that the eleven-month delay was the result of the DEA's corroboration of the informant's tip and continued surveillance of the defendant's activities to support the issuance of the warrant. *Id.* at 912.

In *Amorin,* hours before he was arrested, the defendant showed a confidential informant two green duffle bags full of cocaine. *Amorin,* 810 F.2d at 1041. The defendant also told the informant that the duffle bags would soon be transported from the defendant's home to another location for processing. *Id.* After receiving this information, the police placed the defendant's home under visual surveillance. *Id.* The police then observed the codefendant placing the duffle bags in the car. When the defendant started to enter the driver's side of the car, he was arrested. The court of appeals held that the district court found that the reliability of the tip had been sufficiently corroborated to give

rise to probable cause under the automobile exception. *Id.*

The court also held that exigent circumstances justified the search of the car. *Id.* Police had been unable to obtain a search warrant at the time the defendant loaded the car with cocaine. At the time of arrest, the defendant had walked to the driver's side of the car and was about to embark on the delivery of the cocaine. Officers wisely chose to conduct an arrest at this moment rather than risk the potential of a high speed chase once the defendant had gotten into the car. *Id.* The court stated that the search of the car was "more closely analogous to a vehicle stop on the open freeway." *Id.*

In a recent case decided by the United States Supreme Court, the Court held that an anonymous tip corroborated by independent police work only "exhibited sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop." *Alabama v. White*, —— U.S. ——, ——, 110 S.Ct. 2412, 2412, 110 L.Ed.2d 301, 306 (1990). The anonymous caller told the Montgomery, Alabama police that a woman would be leaving room 235–C of an apartment building at a particular time. The caller told the police she would get in a brown Plymouth station wagon with the right taillight broken, that she would drive to a certain motel and that she would be carrying a brown attache case containing about an ounce of cocaine. *White*, —— U.S. at ——, 110 S.Ct. at 2414–15, 110 L.Ed.2d at 306–07.

Soon after the call two police officers proceeded to the apartment complex and placed building 235 under surveillance. Not long after the department received the information, White left the 235 building with nothing in her hands. She entered the station wagon described by the informant and began driving the most direct route to Dobey's Motel, the destination described by the informant. At 4:18 P.M., about an hour and eighteen minutes after the police received the call, she was stopped short of the motel. *Id.* at ——, 110 S.Ct. at 2414–15, 110 L.Ed.2d at 307. After being stopped, the officers informed her that she was suspected of carrying cocaine. The officers obtained her permission to search the car. They found an attache case and White provided them with the combination. The officers discovered marijuana in the attache case and then placed her under arrest. Later, during processing at the police station, the officers discovered three milligrams of cocaine in her purse. *Id.* at ——, 110 S.Ct. at 2414–15, 110 L.Ed.2d at 307.

Comparing these circumstances to *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and its "totality of the circumstances" test in deciding whether probable cause or reasonable suspicion existed, the Court found there was reasonable suspicion to stop the vehicle. The Court pointed out that some of the caller's information was not accurate. But the fact that she left around the stated time, in the described vehicle and took the most direct route to the alleged destination, the Court said enough information was corroborated to give rise to reasonable suspicion. *White*, at ——, 110 S.Ct. at 2416–17, 110 L.Ed.2d at 309. The Court acknowledged that it was a "close case." *Id.* at ——, 110 S.Ct. at 2417, 110 L.Ed.2d at 310.

[3] Here, we must first decide if there was probable cause to search Campbell's pickup truck when it was stopped at the Union 76 Truck Stop. Probable cause exists " 'when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contains contraband.' " *United States v. Wilson*, 894 F.2d 1245, 1254 (11th Cir.1990) (quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977). The Supreme Court echoed this analysis when it adopted the totality of the circumstances test for determining when information provided by an informant rises to the level of probable cause. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983).

The totality of the circumstances do not suggest that the Montgomery police had probable cause to arrest the defendants, much less search the vehicle when

they first encountered it at the truck stop. The district court found that the confidential informant was not reliable, but still found that the officers had probable cause to arrest the occupants of the pickup based on reliability of the information provided by the informant. The key to the district court's conclusion was that the informant provided the police with the approximate time of the vehicle's arrival and the location where it would stop. Campbell concedes that when the agents observed the pickup truck enter the Union 76 Truck Stop "they had *reasonable suspicion* to conduct a valid investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny." [Emphasis in original.] App.Br. 7.

Thus, under the holding of *Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the most that the Montgomery police had was a reasonable suspicion of illegal activity. In *White* the police kept the suspect under surveillance in order to corroborate the information. There was not the type of corroboration of criminal activity found in *Cauchon* and *Amorin* to elevate it to the level of probable cause.

After an initial fruitless search of the occupants and the pickup truck, the defendants and the truck were taken to the police station. The government maintains that at most it was a brief detention, but the district court found that at that moment an arrest had been made and that probable cause existed to support the arrest.

At no point prior to the 2:55 A.M. discovery of the marijuana did the police have any incriminating evidence to justify holding Campbell and the other defendants. They had been detained almost three hours before the marijuana was discovered. At 1:27 A.M. Campbell signed a consent to search form.[3] After executing the form the police brought in a trained dog which failed to find the cocaine. Not until a

second dog, owned by the Alabama State patrol, arrived did the police discover the marijuana.

Thus, the district court erred as a matter of law in finding that probable cause and exigent circumstances existed at the time the defendants were arrested. The court contradicted itself when it found that the confidential informant was unreliable and then based its conclusion of probable cause on the information provided by that informant. The exigent circumstances ceased to exist after the police made a cursory search of the occupants and the vehicle at the truck stop. Based on the district court's findings of fact, the most the police could have had at the truck stop was "a reasonable suspicion" that Campbell was carrying drugs. After they searched the occupants and the vehicle at the truck stop even that dissipated.

■ There remains the question of whether the consent, if it was in fact given, cured the illegal arrest. The marijuana must be suppressed as fruit of an illegal arrest unless Campbell's consent to search was "both (1) voluntary, and (2) not the product of the illegal detention." *United States v. Robinson*, 690 F.2d 869, 877 (11th Cir.1982). The factors to be considered in resolving this issue are "(a) the temporal proximity of the arrest and the consent to search, (b) intervening circumstances, and (c) the purpose and flagrancy of the official misconduct." *Id.* at 877. *See Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416, 426–27 (1975).

■ As stated earlier the district court did not make a finding of whether the consent was voluntary. Even if the consent was voluntary, the record is developed in sufficient detail to enable us to decide the issue of whether the consent was the product of an illegal arrest.[4] We conclude

---

**3.** The district court did not reach or decide whether the consent was voluntary. Even if it was voluntary, the question now is whether it was tainted by the illegal arrest.

**4.** The court in *United States v. Robinson*, 690 F.2d 869 (11th Cir.1982) followed the same poli-

cy even though the district court and magistrate did not address it. The U.S. Supreme Court reached the issue in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), even though the lower courts did not, for the same reason.

that the consent was tainted by the illegal arrest and, as a consequence, the marijuana must be suppressed.

First, Campbell and the others were arrested at the truck-stop without probable cause. Next, she was taken to the station, separated from her children and the others, and repeatedly questioned until she agreed to sign the consent form. She was taken into police custody at approximately 12:15 A.M. and detained by the police until she was charged at 2:55 A.M. Third, there were no substantial intervening events to cure the taint of the illegal arrest.

Accordingly, the district court's denial of Campbell's motion to suppress the evidence is

REVERSED.