[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12170
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-00189-MHH-HNJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSHUA SCOT WEST,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 3, 2020)


Before MARTIN, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Joshua West appeals his conviction after pleading guilty to possession with intent to distribute heroin and methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  On appeal, West challenges the district court's denial of his motion to suppress evidence seized during the warrantless search of his truck during a traffic stop.  Reversible error has been shown; we reverse the denial of West's motion to suppress.  Accordingly, we vacate the conviction and remand for further proceedings.

I.    Background

At about 4:30pm on a Thursday afternoon, Officer Williams observed a pickup truck -- driven by West -- run through a red light.  Shortly thereafter, West turned into the parking lot of the County Administration Building.[1]  Between the time West ran the red light and the time he parked his truck, West engaged in no erratic driving such as changing lanes, speeding up, swerving, cutting off other

---

[1] Although West continued to drive for over two blocks after running the red light, the district court determined that it was unclear from the record when -- in the space of those two blocks -- Officer Williams activated his blue lights and when West became aware of Officer Williams's presence.

2

vehicles, or making sudden sharp turns.  After West came to a stop, Officer Williams noticed that West's truck had a dealership "drive off tag" instead of a valid Alabama tag.

After parking his truck, West opened immediately the driver's side door and started to exit the truck with an envelope of papers in his hands.  Officer Williams ordered West to remain in the truck; West complied.

Meanwhile, Officer Sorrell -- who had heard over the radio that Officer Williams was initiating a traffic stop -- arrived on the scene as back-up.  After Officer Williams first made contact with West, Officer Sorrell walked up and stood outside the passenger door of West's truck.  West was aware of Officer Sorrell's standing next to the truck.

Officer Williams asked West for his identification and proof of insurance. Officer Williams also questioned West about when West had purchased the truck and whether he had proof of ownership.  In response to Officer Williams's questions, West said he had bought the truck recently and had been on his way to the car tag office (located near the parking lot in which West had pulled over) to get a new tag before the office closed for the day.  West had in his lap an 8½ by 11-inch envelope full of documents.  West searched in the envelope for the documents requested by Officer Williams.  West also looked elsewhere in the truck for his proof of insurance, including reaching over several times across the truck.

3

West then handed Officer Williams his driver's license, his insurance card, and -- by mistake -- the title for his motorcycle. West recognized immediately his mistake and continued looking for the correct title. Officer Williams then told West he did not need to provide the title to the truck.[2]

Officer Williams then returned to his patrol car and ran a license check on West: the license check reported that West's license was "good" and that West had no outstanding warrants. Officer Williams then started to write West a citation for running the red light.

While Officer Williams was in his patrol car, Officer Sorrell -- who remained standing outside the passenger-side door -- saw West look repeatedly in the rear-view and driver-side mirrors to look back at Officer Williams. West also flipped through the papers in the envelope and -- at one point -- placed his right hand by his side, brought his hand back up with his fist closed, and then opened fully his hand over the envelope. Based on West's hand movement, Officer Sorrell believed West had dropped something into his lap, around his lap, or into the envelope itself. Officer Sorrell, however, saw no item in -- or drop out of -- West's hand. To the extent West held an object, the object was small enough to be concealed fully inside West's fist. As soon as Officer Sorrell saw West open his

---

[2] Although Officers Williams and Sorrell testified that West appeared nervous and agitated during this interaction with Officer Williams, the district court found that the officers' testimony about West's demeanor was contradicted by the video recording of the traffic stop.

hand, Officer Sorrell opened the passenger door and questioned West about what he was doing.

At this point, Officer Williams returned to the truck. Officer Williams ordered West to step out of the truck, which West did while still holding the envelope of documents. Officer Williams ordered West to drop the envelope; West complied, dropping the envelope in the driver's seat.[3] Officer Williams walked West to the back of the truck and placed him in handcuffs. Officer Williams then conducted a pat-down search of West's person, which revealed no weapons or contraband.

West consented to have Officer Williams search his pockets but told Officer Williams expressly that he gave no consent to the officers to search his truck. Based on the video footage, the district court described West as remaining "calm" and as "cooperating" with the officers as he was removed from the truck, handcuffed and patted down.

Soon after West exited the truck, Officer Sorrell conducted an initial search of the truck, starting with the driver's seat and the envelope. Within 40 seconds, Officer Sorrell approached Officer Williams holding a small clear plastic bag he

[3] The government makes no argument that West's stepping out of the truck while holding the envelope is an important fact calling for a special analysis. For purposes of this appeal -- and consistent with the arguments of both parties -- we treat the envelope, at all times, as a container within a vehicle.

5

had discovered inside the envelope. The bag containing a white substance the officers believed to be methamphetamine.

Officer Williams placed West under arrest for unlawful possession of a controlled substance. Officers Williams and Sorrell then conducted a full warrantless search of the truck incident to West's arrest. During that second search, the officers found a scale, a burned marijuana cigarette, and several plastic bags containing various controlled substances and prescription pills.

II.    Motion to Suppress

West moved to suppress all evidence seized as a result of the initial warrantless search of his truck.[4] In response, the government asserted that the initial search was justified under two separate theories: (1) as a protective search because the officers had reasonable suspicion to believe that West was armed and dangerous; and (2) under the automobile exception to the warrant requirement because the officers had probable cause to believe that contraband would be found in the truck.

---

[4] West also moved to suppress statements he made to the officers after he was under arrest and before he was advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The district court granted West's motion; that issue is not before us on appeal.

6

Following a suppression hearing, the magistrate judge concluded that the initial search of West's truck constituted no Fourth Amendment violation and, thus, recommended that the district court deny West's motion to suppress. The magistrate judge first determined that the totality of the circumstances -- including West's hand movements around his lap and the envelope and West's glancing repeatedly into the mirrors -- gave rise to a reasonable suspicion that West had concealed a weapon in the truck. Accordingly, the officers were entitled to conduct a protective search of the truck for weapons. The magistrate judge, however, rejected the government's second argument. The magistrate judge concluded that -- at the time of the initial search -- no probable cause existed to believe that contraband or evidence of a crime would be discovered in West's truck.

The district court agreed with the magistrate judge's ultimate recommendation and denied West's motion to suppress. The district court, however, disagreed with some of the magistrate judge's findings and conclusions. First, the district court concluded that no reasonable suspicion existed to justify a protective search of the truck for a weapon. The district court found that, because the envelope was full of papers, no dangerous weapon could have been dropped into the envelope without first holding the papers aside: a motion that "would have been conspicuous and easily observed by Officer Sorrell." The district court also

7

noted that a weapon, "even one small enough to fit into Mr. West's closed fist, likely would make a visible impact on the envelope as it fell, and it would leave a bulge in the envelope."

The district court, however, determined that probable cause existed to search the envelope in the truck for contraband. The district court made that determination based on (1) West's watching Officer Williams in the rear-view mirror and (2) West's hand motion of opening his closed fist over the envelope.

West entered a conditional guilty plea, reserving his right to appeal the district court's ruling on his motion to suppress. The district court sentenced West to 48 month's imprisonment.

III.   Discussion

We review the district court's denial of "a motion to suppress evidence under a mixed standard, reviewing the court's findings of fact for clear error and the application of law to those facts de novo, construing the facts in the light most favorable to the prevailing party below." United States v. Pierre, 825 F.3d 1183, 1191 (11th Cir. 2016). Here, the district judge fact findings are not clearly erroneous.

As an initial matter, that the traffic stop itself was lawful is undisputed. West concedes he ran a red light and, thus, Officer Williams was justified in pulling him over.  See Whren v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

The sole issue on appeal is whether Officer Sorrell's initial search of the envelope inside West's truck was constitutional under the Fourth Amendment.  "A search without a warrant based on probable cause is illegal, unless the government can show that it falls into one of those limited exceptions recognized by law." United States v. Campbell, 920 F.2d 793, 795 (11th Cir. 1991).  We address separately each of the two limited exceptions implicated in this case.

A.    *Protective Search*

"It is well established that officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (quotations omitted).  Among other things, an officer may conduct a warrantless search for weapons inside a vehicle's passenger compartment if the officer "possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences

9

from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Mich. v. Long, 463 U.S. 1032, 1049-51 (1983).

In determining whether a warrantless vehicle search was justified, we consider "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 1050. In Long, the Supreme Court concluded that the officers believed reasonably that defendant posed a danger given these circumstances: (1) it was after midnight in a rural area; (2) the officers observed defendant driving at an excessive speed before swerving into a ditch; (3) defendant appeared intoxicated; and (4) the officers observed a large knife in plain view inside the vehicle. Id.

Given the totality of the circumstances presented in this case, no reasonably prudent man could have concluded that West posed a danger to the safety of the officers or to others. Unlike in Long, the pertinent events in this case occurred during daylight hours and in a populated area. Nothing evidences that West was driving or behaving erratically or that West was intoxicated. Never did West exhibit aggressive behavior toward the officers. To the contrary, West complied with the officers' orders and remained "calm" and cooperative during the encounter. The officers also observed no weapons in plain view in the vehicle.

10

Furthermore, a protective search must be limited to areas that could contain a weapon.  See Long, 463 U.S. at 1050-51.  The district court found that the envelope -- which had been in West's hands and lap to the end of the encounter -- was full of papers and could not have been used to hide even a small weapon without first pushing the papers aside and without creating a visible bulge.

In the light of these circumstances, no reasonable suspicion could exist that would support Officer Sorrell's initial search of West's truck or the envelope for weapons.  Accordingly, we conclude that the initial warrantless search of West's truck falls outside the scope of the protective search exception recognized in Long.

*B.     Automobile Exception*

Under the automobile exception to the Fourth Amendment's warrant requirement, police may perform a warrantless search of a vehicle if probable cause exists to believe the vehicle contains contraband or evidence of criminal activity.  California v. Acevedo, 500 U.S. 565, 580 (1991).  Once probable cause exists to search a vehicle, the police may search a container within the vehicle if probable cause exists to believe the container holds contraband or evidence of criminal activity.  Id. at 579-80.  Probable cause exists to conduct a warrantless search "when under the totality of the circumstances, there is a fair probability that

11

contraband or evidence of a crime will be found in the vehicle." United States v. Tamari, 454 F.3d 1259, 1264 (11th Cir. 2006) (quotations omitted).

In considering a warrantless search under the automobile exception, we have concluded that the following circumstances -- among others -- give rise to probable cause. First, probable cause exists when an officer observes contraband in plain view inside the vehicle. See United States v. Spoerke, 568 F.3d 1236, 1249 (11th Cir. 2009) (finding probable cause to search the vehicle when the officer observed a pipe bomb in plain view). Probable cause may also be established when an officer smells marijuana or when a drug-sniffing dog detects the presence of narcotics. See United States v. Dixon, 901 F.3d 1322, 1339 (11th Cir. 2018) ("an officer's credible testimony that he smelled marijuana can establish probable cause"); United States v. Tamari, 454 F.3d 1259, 1265 (11th Cir. 2006) (recognizing that "probable cause arises when a drug-trained canine alerts to drugs"). We have also concluded that probable cause may arise based on information provided by a confidential informant "when combined with independent corroboration by the police," see United States v. Talley, 108 F.3d 277, 281-82 (11th Cir. 1997), or based on information obtained by police during an ongoing criminal investigation, see United States v. Lanzon, 639 F.3d 1293, 1300 (11th Cir. 2011) (probable cause existed based on the officers' instant message conversations during which defendant described his intent to engage in criminal

12

activity at an agreed-upon time and place).  The circumstances in the present case are weaker to support probable cause.

Given the totality of the circumstances presented in this case, we conclude that no probable cause existed to justify Officer Sorrell's initial search of West's truck.  West was pulled over for having run a red light.  West engaged in no erratic driving, and nothing evidenced that West attempted to flee.  Neither officer had had prior dealings with or knowledge of West before the traffic stop.  Nor did either officer smell or see marijuana or other contraband inside the truck.

During the traffic stop, West complied with Officer Williams's orders, provided Officer Williams with the requested information and documents, and remained calm and cooperative.  Officer Williams confirmed that West had a valid driver's license and no outstanding warrants.  These circumstances gave the officers no good reason to suspect West of engaging in criminal activity beyond running a red light.

Officer Sorrell then observed West's looking repeatedly in the truck's mirrors at Officer Williams (who had stopped West) and West's raising a closed fist which he then opened over the envelope.  Officer Sorrell, however, saw no object inside West's hand or fall out of West's hand.

In the light of these facts and guided by our precedent about the kinds of circumstances sufficient to support probable cause, no reasonable and prudent

officer on the scene could have concluded that a fair probability existed (not that it was just conceivable) that contraband or evidence of a crime would be found in West's truck or in the envelope.  That West, in a routine traffic stop, looked repeatedly at his mirror at the officer who had stopped him and opened his fist over an envelope -- without more -- is not enough to give rise to probable cause supporting a warrantless search of West's truck.[5]  Cf. United States v. Tobin, 923 F.2d 1506, 1510 (11th Cir. 1991) (concluding probable cause existed to search a garage when officers "observed the defendants behave suspiciously, look about furtively, and quickly transfer into the garage tubular bags which contained smaller bundles.").  Probable cause is an objective test for courts to apply and requires more than a policeman's mere suspicion or a "hunch" of criminal activity.  See Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000).  That something incriminating is, in fact, produced by a search does not count in calculating whether probable cause existed to begin the search, of course.

We conclude that Officer Sorrell's initial search of West's truck fell under no exception to the warrant requirement and, thus, was unlawful under the Fourth Amendment.  Accordingly, the district court erred in denying West's motion to

---

[5] Given the record and questions before us, we have no occasion to determine whether the facts presented in this case might have supported prolonging the traffic stop for additional questioning of West or for calling a drug-sniffing dog: investigational activities that might have led to evidence sufficient to constitute probable cause to conduct a warrantless search.

14

suppress evidence obtained as a result of the initial warrantless search.  We reverse the district court's denial of West's motion to suppress; we vacate the conviction and remand for further proceedings.

VACATED AND REMANDED.