UNITED STATES of America,

v.

**Darryl Keith WILLIAMS.**

No. 96–78–CR–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

March 17, 1997.

Richard Escobar, Richard Escobar, P.A., Tampa, FL, for Darryl Williams.

Kenneth E. Lawson, U.S. Attorney's Office M.D. Florida, Tampa, FL, for U.S.

## *ORDER DENYING MOTION TO WITHDRAW GUILTY PLEAS*

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant DARRYL KEITH WILLIAMS' motion to withdraw guilty pleas (Docket No. 42), unsworn affidavit of the defendant in support (Docket No. 44), memorandum of law in support (Docket No. 43), and the Government's response (Docket No. 46).[1] The Court has also reviewed the record in its entirety, as contained within the file.

### *FACTS*

On March 28, 1996, a federal grand jury returned an indictment, charging the defendant WILLIAMS with three (3) counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts 1, 3, & 4), and one (1) count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2).[2] Counts One (1), Three (3), and Four (4)—involving cocaine base—each carry a minimum mandatory prison sentence of ten (10) years and a potential for life, a fine of $4,000,000.00, a term of supervised release of five (5) years, and a special assessment of $50.00 payable on the date of sentencing. Count Two (2)—involving cocaine—carries a maximum prison sentence of twenty (20) years with no minimum mandatory, a fine of $1,000,000.00, a term of supervised release of three (3) years, and a special assessment of $50.00 payable on the date of sentencing. (Notice of Essential Elements and Penalty, Docket No. 21). The indictment also contains a forfeiture provision with regard to the defendant's real property located in Hillsborough County, Florida, known as "Del Rio Estates." (Docket No. 17).

---

1. Although its response was due on March 11, 1997 (Docket No. 45), the Court telephonically granted the Government an extension of time until the morning of March 12, 1997.

2. In a prior order (Docket No. 29), the Court inadvertently stated that all counts involved cocaine base. The Court hereby strikes the last sentence on page one (1) of said order.

At an arraignment hearing before the Honorable Thomas G. Wilson, United States Magistrate Judge, the defendant—represented by Norman Cannella, Esq.—waived a reading of the indictment and entered not guilty pleas as to all counts of the indictment. (April 19, 1996; Docket No. 13). Over a month later, on June 24, 1996, the defendant appeared before Magistrate Wilson in order to withdraw his not guilty pleas and tender guilty pleas as to all counts. The hearing lasted from approximately 10:04 a.m. until 10:15 a.m., and 10:25 a.m. until 10:48 a.m, with a recess sandwiched between these times. (Docket No. 20).

The transcript of the change of plea I rearraignment hearing is thirty-two (32) pages long. (Docket No. 41). The defendant was under oath at all relevant times. In the first portion of the hearing (from 10:04 a.m. until 10:15 a.m.), Magistrate Judge Wilson advised the defendant of his right to plead before a district judge, but the defendant responded "yes" when questioned if he wished to proceed before the magistrate judge. (pp. 2–3). Magistrate Judge Wilson asked the defendant how he plead to each count, and the defendant said "guilty." (pp 4–5). The defendant responded "yes" when asked if he had graduated from high school and could read, write, and speak the English language. (p.6). The defendant said "yes" when asked whether he understood that he could simply change his mind at any point during the proceeding and re-enter not guilty pleas. (p.7). The magistrate judge explained the defendant's right to a jury trial, to cross-examine Government witnesses, to advance defense witnesses, and to testify on his own behalf without being compelled to do so by the Government. (pp. 8–9). The following colloquy then took place:

> [THE COURT]: Do you understand you would have these rights and others if this case went to trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that by pleading guilty, you give up all of these rights and that there will be no trial in this case? Do you understand that?
>
> THE DEFENDANT: (Inaudible).
>
> (Pause.)
>
> MR. CANNELLA: So the record is clear, Judge.... With regard to the conversa-

tion I had with him, in generalities, he's concerned that the guilty plea could affect the forfeiture claim for the real property.

> I have explained to him that—he previously indicated to me that he was not intending to contest the forfeiture. I suggested to him that the colloquy that you were having with him now, in my opinion, would not directly affect the forfeiture claim....
>
> THE COURT: Are we talking about the Del Rio ... Estates property?

> \*     \*     \*     \*     \*     \*

> [Assistant United States Attorney] MR. LAWSON: Yes. That's correct.
>
> MR. CANNELLA: Yes. That's correct. He told me today for the first time that his wife has an interest in that property, and I explained to him that any effect that might come about as a result of any guilty plea would affect his interests and his interests only in the property.
>
> Now, I assume that he's—that he is willing to continue with the plea of guilty.
>
> Is that correct?
>
> THE COURT: Well, Mr. Williams, let me raise this: Is this some issue that's just come up today in your mind that's just been raised?
>
> THE DEFENDANT: Well, hearing him say that, yes.
>
> THE COURT: Do you wish more time to think about it? In other words, do you wish to continue this proceeding until some later time in the week or some other time?
>
> Is this case set for trial?
>
> MR. LAWSON: No, sir.
>
> THE COURT: This is a critical stage of this case. As I've just said, after today, you can't withdraw your plea of guilty. The only thing that remains to be done is for the Court to impose sentence upon you, and so under those circumstances, I'm prepared to give the Defendant the time he or she needs ... to think about things....
>
> MR. CANNELLA: ... [I]f you would allow me perhaps ten minutes or so,... I think I can clear this matter up.

> \*     \*     \*     \*     \*     \*

THE COURT: Well, I'll give you whatever time you need.

MR. CANNELLA: Thank you.

THE COURT: Court will be in recess.

(pp. 9–11) (as altered by ellipses, brackets, and asterisks).

After the recess, defense counsel stated that he and his client would proceed. The magistrate judge asked the defendant if he understood that "by pleading guilty, I've just—I've gone over a whole lot of rights that you would have if this case went to trial. You lose all of those rights—do you understand that?—and that there will be no trial in this case?" (pp. 12). Although the defendant's response to that question was inaudible to the court reporter, he did answered "yes" to the magistrate judge's questions of whether he understood that, by pleading guilty, he would lose any defenses to the charges and rights to file motion(s) to suppress. (p.12).

With regard to his representation by Attorney Cannella, the defendant answered "yes," he had a full opportunity to discuss the case with Attorney Cannella; "no," he did not need any more time to consult with Attorney Cannella; "yes," he was satisfied with Attorney Cannella's representation; and "no," there was nothing that the defendant thought Attorney Cannella should have done that he did not do. (p.13).

With regard to the indictment, the defendant stated "yes," he had gone over the charges with Attorney Cannella; "yes," he understood the charges; and "no," he did not have any questions about them. (p.13). The magistrate judge explained the essential elements of the crimes charged in counts one (1) through four (4) and their applicable penalties, consistent with this Court's recitation *supra*. The defendant answered "yes" to the magistrate judge's many questions of whether he understood about the various aspects of these counts. The only different answer occurred in relation to the fine colloquy:

> THE COURT: With respect to fines, both—all of these offense carry fines.
> The Counts in 1, 3 and 4 authorize a maximum fine of up to $4 million, and Count 2 authorizes a maximum fine of $1 million.

> Do you understand those to be the fines that could be imposed in this case?
> THE DEFENDANT: I do now.
> THE COURT: All right. Is that the first time you have heard about—
> THE DEFENDANT: About those, yes.
> MR. CANNELLA: May I have just a second?
> THE COURT: Sure. Sure.
> (Pause.)
> MR. CANNELLA: Thank you very much. We're ready to continue to proceed.
> THE COURT: Okay. Well, you understand those are the maximum fines that could be imposed?
> THE DEFENDANT: Yes.
> THE COURT: Let me back up a step. Were you aware of the prison penalties that could have been imposed before today?
> THE DEFENDANT: Yes.
> THE COURT: So, you didn't hear that for the first time this morning?
> THE DEFENDANT: No.
> THE COURT: All right. Now, with respect to the fines, having now been advised of what these fines are, do you wish to go forward?
> THE DEFENDANT: Yes.
> THE COURT: Do you wish to take any time to think about the potential fines in this case?
> THE DEFENDANT: (Inaudible.)

(pp. 15–16).

With regard to the forfeiture provisions of the indictment, the magistrate judge explained that the Government was seeking forfeiture of the Del Rio Estates property and that the defendant would have to give up his interests in that property. The defendant indicated that he understood both of these assertions. Addressing the defendant's concern about his wife's interests in the property, the magistrate judge explained that there was a procedure for innocent third parties to protect their interests in property subject to forfeiture. The defendant indicated that he understood that. The magistrate judge and the defendant also engaged in the following colloquy:

> THE COURT: Do you deny that this piece of property—or do you admit that

this piece of property was used to facilitate these offenses to which you plead?

THE DEFENDANT: Yes.

THE COURT: There were drugs in the house—

THE DEFENDANT: Yes.

THE COURT:—from time to time?

THE DEFENDANT: At the time [law enforcement] came in, there was drugs. (pp. 19–20).

The magistrate judge asked the defendant whether he understood that, as a result of these felonies, he would lose certain civil rights, such as the right to vote, to hold public office, to possess firearms, and to serve on a jury. The defendant said "yes," he understood. (p.20). Magistrate Judge Wilson explained the sentencing procedure, including the role of the probation office and the pre-sentence investigation report, and the fact that the sentencing judge could potentially impose a sentence above or below the range prescribed by the sentencing guidelines. The defendant responded affirmatively to all of the magistrate judge's questions.

The Government proffered the following factual basis for the guilty pleas:

> In early 1996, DEA identified the Defendant as a drug dealer. As part of their investigation, on January 26th of this year, undercover agents bought 47.5 grams of crack cocaine from the Defendant.
>
> Again, they purchased some crack cocaine from the Defendant on February 8th of this year, a total of 125 grams.
>
> Afterwards, a search warrant was executed on his residence [Del Rio Estates] around March 11th of '96 ... and agents found 101 grams of cocaine base and 40 grams of cocaine powder.
>
> All of these substances were tested and tested positive as controlled substances, Your Honor.

(p.22). Following this proffer, the magistrate judge and the defendant engaged in the following colloquy:

THE COURT: Mr. Wiliams, do you have any dispute with that statement of fact?

THE DEFENDANT: No.

THE COURT: Did you, in fact, engage in the sale of crack cocaine?

THE DEFENDANT: Yes.

THE COURT: And when you were selling this substance, did you know it was crack cocaine?

THE DEFENDANT: Yes.

\*      \*      \*      \*      \*      \*

THE COURT: And have your answers been the truth?

THE DEFENDANT: Yes.

(pp 22–24). The defendant indicated that "yes," his plea was being entered freely and voluntarily, and without coercion, coaching, force, or promises from anyone. (pp 23–24). Attorney Cannella expressed his confidence that the defendant completely understood the charges and their consequences. (p.24). He also stated that, although he explained the "safety valve"[3] and "substantial assistance"[4] provisions to the defendant, the defendant "made a conscious decision, fully informed decision, not to take advantage of" them. (p.25). Upon inquiry from the magistrate judge, the defendant responded that "yes," Attorney Cannella had discussed these provisions with him. (pp. 25–26). Attorney Cannella's assertions are corroborated by a letter he delivered to the defendant from Attorney Cannella, where the defendant subscribed his signature in a space under a sentence that read "I do not want to avail myself of the safety valve or substantial assistance provisions of the sentencing guidelines." (Exhibit B, Docket No. 30).

In a written order dated June 24, 1996, Magistrate Judge Wilson recommended that this Court accept the pleas of guilty. (Docket No. 24). By order dated July 18, 1996, this Court accepted the pleas, adjudicated the defendant guilty as to all four (4) counts, and directed the defendant to report to the custody of the U.S. Marshal to be detained prior to sentencing. (Docket No. 29).

By letter dated September 25, 1996, the defendant asked Magistrate Judge Wilson to allow him to withdraw his pleas of guilty. (Exhibit C, Docket No. 30). The letter was "cc" ed to this Court and Attorney Cannella.[5]

---

3. 18 U.S.C. § 3553(f); USSG § 5C1.2.

4. 18 U.S.C. § 3553(e); USSG § 5K1.1.

5. Because this letter does not appear as an original filing, it apparently was returned to the de-

On October 11, 1996, Attorney Cannella moved to withdraw as counsel to the defendant, because he had "been placed in an adversarial position with respect to the Defendant." (Docket No. 30, p. 2). Magistrate Judge Wilson granted the motion, and Mr. Richard Escobar, Esq., was ultimately retained by the defendant. Less than a month after his formal appearance, Mr. Escobar filed the instant motion on behalf of the defendant. In his unsworn affidavit, the defendant attests, *inter alia*, that he is innocent.

## DISCUSSION

■ Rule 32(e), Fed.R.Crim.P., provides that, prior to imposing sentence, "the court may permit the plea[s] to be withdrawn if the defendant shows any fair and just reason." *Id.* (emphasis added); *United States v. Stitzer*, 785 F.2d 1506, 1514 (11th Cir.) (emphasizing the word "may"), *cert. denied*, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986). As recently stated by the United States Court of Appeals for the Eleventh Circuit:

> In determining if the defendant has met this burden, a district court must consider whether: (1) close assistance of counsel was available; (2) the plea was knowing and voluntary; (3) judicial resources would be conserved; and (4) the government would be prejudiced if the defendant were allowed to withdraw his plea.

*United States v. Siegel*, 102 F.3d 477, 481 (11th Cir.1996). This Court has also considered a fifth factor, "the lapse of time between the entry of the plea and the motion to withdraw." *United States v. Joseph*, 742 F.Supp. 618, 619 (M.D.Fla.1990) (Kovachevich, J., adopting the report and recommendation of Jenkins, M.J.). Readily apparent from the face of Rule 32(e), the decision to grant or deny a defendant's motion to withdraw guilty pleas is within the "sound discretion" of the district court, *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989), and is reversible by the circuit court "only when it constitutes an abuse of discretion." *United States v.*

*McCarty,* 99 F.3d 383, 385 (11th Cir.1996). Furthermore, "[t]he good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw pleas under Rule 32(e) ], are issues for the trial court to decide." *Buckles,* 843 F.2d at 472.

In the present case, neither party requests an evidentiary hearing. As this Court has previously stated:

> A defendant who seeks to withdraw his plea is not automatically entitled to an evidentiary hearing. Where the only evidence in support of the motion to withdraw is the affidavit of a defendant which contradicts his former testimony at the change of plea hearing, an evidentiary hearing is not required. On the other hand, where a motion is accompanied by credible third party affidavits or other documentary evidence, an evidentiary hearing is needed. An evidentiary hearing is also needed if the defendant's affidavit is not contradicted by the remainder of the record.

*Joseph,* 742 F.Supp. at 619 (Kovachevich, J., adopting the report and recommendation of Jenkins, M.J.) (citations omitted). In the present case, the defendant advances only one unsworn (1) affidavit as factual support, his own.[6] Further, this affidavit is unsworn, clearly contradicts his former testimony, and it is not supported by the record or any credible third party affidavit. As such, a hearing is unnecessary.

### A. Close Assistance of Counsel

Basically, the defendant argues that Mr. Cannella, the defendant's privately-retained attorney, "rushed" and "pressured" him into pleading guilty. Specifically, the defendant attests that Attorney Cannella (1) inadequately investigated the case; (2) caused the defendant to believe that the rearraignment hearing was merely a status conference; (3) failed to inform the defendant of how many counts he was facing; (4) failed to inform the defendant of the potential fines; and (5) inadequately explained the "safety value" and "substantial assistance" sentencing guidelines

---

fendant pursuant to Rule 3.01(f), Local R. M.D. Fla., which prohibits motions in the form of a letter addressed to a judge.

**6.** In fact, on the face of the affidavit, the notary public specifically states that the defendant-affiant did not take an oath.

provisions. The Government relies on the record, labeling the defendant's assertions "disingenuous."

■ The Court finds that the defendant received close assistance of counsel prior to and during the change of plea/rearraignment proceeding. The record commands this conclusion. The defendant unambiguously indicated to Magistrate Judge Wilson that he was entirely satisfied with his lawyer. *Cf. United States v. Tivis*, 421 F.2d 147 (5th Cir.1970) (affirming district court's denial of motion to withdraw guilty plea because, *inter alia*, the defendant's contention of "ineffective assistance of his privately-retained attorneys" was refuted by the record).

There is absolutely no evidence, beyond the defendant's bare assertion, that Attorney Cannella "rushed" or "pressured" the defendant to do anything. Although it is apparent from the record that Attorney Cannella sought to finish the change of plea hearing on June 24, there is no reason for this Court to believe that he was not acting in his client's best interests. Indeed, given that he was "completely convinced" that the defendant freely, voluntarily, and knowingly pled guilty to the indictment, it is entirely reasonable for Attorney Cannella to want to finish the change of plea hearing at one (1) sitting so that the sentencing process could begin and his client could achieve a sense of finality.

Additionally, even if the Court were to believe the defendant's unsworn statement that he had met with Attorney Cannella no more than one and one-half hours before the change of plea hearing, this "time sheet" evidence *does nothing to refute the defendant's prior, sworn testimony that he did not need any more time with his lawyer.* See *also United States v. Rasmussen*, 642 F.2d 165, 167 n. 4 (5th Cir. Unit B 1981) (rejecting the defendant's unpreserved argument that one and one-half hours was insufficient time to confer with appointed counsel). Rather, the record unambiguously indicates that Attorney Cannella fully explained the charges to the defendant, including their prison penalties, how the forfeiture provision applied to his interest in Del Rio Estates, and the "safety valve" and "substantial assistance" options. More importantly, the record clearly demonstrates that the defendant understood these and other core consequences of pleading guilty.

The defendant's contention that Attorney Cannella inadequately investigated his case is also wholly unsupported by the record. *Cf. United States v. McCarty*, 99 F.3d 383, 385 (11th Cir.1996) (rejecting the defendant's argument that "he felt compelled to plead guilty because he was intimidated into doing so by his lawyer who ... failed to investigate his case or prepare for trial"). The facts of this case are relatively simple: undercover DEA agents purchased crack cocaine from the defendant on at least two (2) separate occasions, which led the Government to apply for, and execute, a search warrant on the defendant's home, where both crack cocaine and cocaine were found. (Transcript at p. 22). The defendant's bare, unsupported assertion that Attorney Cannella should have considered filing a motion to suppress on grounds that the Government's information was fatally stale to support the search warrant is, at best, a speculative stretch. The search of the defendant's home occurred just over a month since his last outside sale of crack cocaine to the undercover agent. *See, e.g., United States v. Harris*, 20 F.3d 445, 450–51 (11th Cir.) (concluding that a search warrant was not fatally stale, even though the last known act of the defendant occurred eighteen (18) months before the application), *cert. denied*, 513 U.S. 967, 115 S.Ct. 434, 130 L.Ed.2d 346 (1994); *Cauchon v. United States*, 824 F.2d 908, 911 (11th Cir.) (concluding that a search warrant was not fatally stale, even though it was based on a confidential informant's tip given more than a year prior to the application), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987).

There were only two (2) consequences of pleading guilty that the record reveals were not fully explained to the defendant by Attorney Cannella prior to the change of plea / rearraignment hearing. These consequences were the maximum fines that could be imposed as to each count, and how the forfeiture provision would affect the defendant's wife. As to the fines, Attorney Cannella's omission was cured by Magistrate Judge Wilson. He not only fully explain the maximum

fines to the defendant, but also clearly told the defendant to take as long as he needed to discuss the issue with his lawyer. The defendant replied that he "now" understood that large fines could be imposed on him and "yes," he wanted to go forward with the proceeding.

As to the defendant's wife's alleged interest in Del Rio Estates, Attorney Cannella stated that he had explained the innocent third party exception to him prior to the change of plea hearing. In the abundance of caution, Attorney Cannella requested a short recess to further explain it. The post-recess portion of the change of plea hearing unambiguously reflects a complete understanding of the forfeiture provision by the defendant. In any event, the consequences of pleading guilty with regard to a defendant's money and property are far less serious than those with regard to a defendant's liberty, which were thoroughly explained by Attorney Cannella. *See generally United States v. Crumbley*, 872 F.2d 975, 977 (11th Cir.1989) (affirming district court's denial of motion to withdraw plea on the grounds that there was an insufficient factual basis for forfeiture, reasoning that "[s]ociety's reason for concern over the possibility that a guilty person might consent to forfeiture of nonforfeitable property is not comparable to its concern over the danger that an innocent person might agree to conviction and punishment"). *Cf. generally, United States v. McCarty*, 99 F.3d 383, 386–87 (11th Cir.1996) (affirming district court's denial of motion to withdraw plea on the grounds that the court failed to explain restitution, reasoning that, under a "realistic" policy, this omission did not affect the defendant's substantial rights).

### B. Knowing and Voluntary

The defendant argues that he failed to "reflect and understand the full consequences of his plea" and that the magistrate judge failed to instruct him on his rights pursuant to Rule 11(c)(3), Fed.R.Crim.P. The Government relies on the record, contending that the defendant was "quite aware" of the fact that he was pleading guilty and the consequences of doing so.

■ The Court finds that the defendant knowingly and voluntarily entered guilty pleas, just as the defendant himself concluded under oath at the change of plea hearing. (*E.g.*, Transcript at 22). First and foremost, the defendant knew what he was doing, in that he unambiguously admitted his guilt. Having already repeated the word "guilty" at least four (4) times, the defendant stated "no," he had no dispute with the Government's factual basis. He responded "yes," he did, in fact, engage in the sale of crack cocaine, and "yes," he knew that the substance he was selling was crack cocaine. (pp. 22–24). With regard to the controlled substances found in his residence, Del Rio Estates, the defendant replied "yes," his home was used to facilitate the offenses and affirmatively stated that "[a]t the time they[7] came in, there was [sic] drugs." (pp. 19–20).

In light of these prior, sworn admissions of guilt, the defendant's present, unsworn, and conclusory declarations of innocence are utterly bereft of probative value. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.) (affirming district court's denial of motion to withdraw guilty plea, reasoning that "[t]here is a strong presumption that the statements made during the colloquy are true," especially admissions of guilt), *cert. denied*, 513 U.S. 864, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994); *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir.1988) (affirming district court's denial of motion to withdraw guilty plea, concluding that "[a] mere declaration of innocence does not entitle a defendant to withdraw his guilty plea," even though the declaration of innocence was made under oath at an evidentiary hearing on the motion to withdraw), *cert. denied*, 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989); *United States v. Rasmussen*, 642 F.2d 165, 166–67 (5th Cir. Unit B 1981) (affirming district court's denial of motion to withdraw guilty plea, rejecting an affidavit submitted the defendant for its failure to contain a factual explanation to support the defendant's conclusory assertion of innocence). Furthermore, the defendant's affirmative statements about the drugs found in his home demonstrate that he was not just

---

**7.** "They" presumably means the DEA undercover agents.

giving "rote" answers to the magistrate judge's questions, but was actively listening, participating, and responding. *United States v. Joseph,* 742 F.Supp. 618, 621 n. 6 (M.D.Fla.1990).

The Court rejects the defendant's argument that the magistrate judge failed to fully comply with Rule 11(c)(3), Fed.R.Crim.P. This portion of Rule 11 provides, in pertinent part:

> Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, ... that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination. . . .

*Id.* A defendant's understanding that he or she is giving up the above-described rights is a "core concern" of Rule 11, and a court's failure to address these rights constitutes reversible error. *United States v. Siegel,* 102 F.3d 477, 481 (11th Cir.1996) (reversing district court's denial of motion to withdraw guilty plea because the court failed to advise the defendant of the maximum sentences on three (3) out of the eight (8) counts in the indictment).

In the present case, the magistrate judge fully complied with Rule 11, Fed.R.Crim.P., including Rule 11(c)(3). The colloquy was extensive, the transcript of which is thirty-two (32) pages long. *Compare with United States v. Stitzer,* 785 F.2d 1506, 1513 (11th Cir.1986) (affirming district court's denial of motion to withdraw guilty plea, noting that the court's "extensive" and "searching" colloquy filled twenty-seven (27) pages of the transcript), *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986). The early portions of the rearraignment transcript reveal that the magistrate judge explained all of the topics listed in Rule 11(c)(3), to which the defendant said "yes," he understood that he would have those rights if his case went to trial. After the short recess, the magistrate judge revisited the subject, asking the defendant whether he understood that by pleading guilty, he would lose those rights and there would be no trial. Although the defendant's response was inaudible to the court reporter, the magistrate judge obviously heard him say "yes" because he moved on to a related question, whether the defendant understood that, by pleading guilty, he would lose any defenses to the charges and any rights to file motion(s) to suppress. The defendant clearly responded "yes." Therefore, the Court concludes that the defendant knew and understood these and other core consequences of pleading guilty.

As to whether the defendant's pleas were voluntary, the Court has already rejected the defendant's unsworn assertion that Attorney Cannella "pressured" him into pleading guilty. Given the defendant's own sworn testimony, the record unambiguously reflects that the defendant's pleas were free from any pressure, coercion, threats, promises, or false hope. The magistrate judge gave the defendant every opportunity to state otherwise.

### C. Judicial Resources

■ Neither party advances much of an argument with regard to this factor. The defendants mistake this factor for the timeliness one. The Government points out that the Court would obviously conserve resources if it did not have to conduct a jury trial for the defendant. Further, the Government states that, if the defendant were found not guilty by a jury, the U.S. Probation Department—an agency of the judiciary— would have prepared the pre-sentence investigation report for naught. Given the defendant's unambiguous admissions of guilt to Magistrate Wilson, the Court finds that "enough judicial resources have been expended in this case." *United States v. Buckles,* 843 F.2d 469, 474 (11th Cir.1988), *cert. denied,* 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989).

### D. Prosecutorial Prejudice

■ The Court finds that, regardless of its ruling on the instant motion, the Government would not be prejudiced. Even though it has been over a year since the defendant first sold crack cocaine to an undercover DEA

agent, the Government assures the Court that the agent "can identify the defendant as the person who sold him the crack cocaine in [sic] each occasion."

### E. Timeliness

The defendant asserts that his decision to seek permission to withdraw his pleas was timely and that his "swift change of heart is itself strong indication that the plea[s] [were] entered in haste and confusion." *United States v. Gonzalez–Mercado,* 808 F.2d 796, 801 (11th Cir.1987). While the defendant cites to *Gonzalez–Mercado,* he neglects to mention that, in that case, the circuit court concluded that a swift change was "not present," even though the defendant indicated his intent to file a motion to withdraw less than one (1) month after the change of plea hearing. *See id.* at 798, 801.

In the present case, the defendant filed his motion to withdraw pleas not one (1), but eight (8) months after the change of plea hearing and nearly seven (7) months after this Court accepted his pleas, adjudicated him guilty, and revoked his bond. Even if the Court were to look at the defendant's personal letter to Magistrate Judge Wilson, dated September 25, 1996, the defendant's purported "change of heart" was anything but "swift," in that he wrote the magistrate judge more than three (3) months after the change of plea hearing and more than two (2) months after his adjudication.

The Court also notes that the defendant received a copy of the pre-sentence investigation (PSI) report at least five (5) days prior to writing the magistrate judge. (Exhibit C, Docket No. 30). Having already been detained for well over two (2) months, the defendant had already experienced a taste of prison life before he reviewed the PSI report, which recommended that he be imprisoned for decades more. Although the defendant in *United States v. Schubert,* 728 F.2d 1364 (11th Cir.1984), advised the district court of his intent to move to withdraw after receiving a PSI report, his decision was motivated solely on the basis that a confidential informant had committed perjury and, therefore, the defendant's entrapment defense was viable. No comparable facts exist in this case. By all indications, the defendant WILLIAMS' present contention of innocence

is a product of fearing prison and other tough penalties at sentencing. Therefore, the defendant's change of heart is not only untimely, but also disingenuous. The Court summarily rejects the defendant's unsworn conclusion that his delay in seeking to withdraw was caused by his inability to communicate with Attorney Cannella.

### CONCLUSION

The presumption of innocence was conclusively rebutted when the defendant WILLIAMS' guilty pleas were tendered and accepted in the Summer of 1996. After due consideration of the record and the arguments of counsel, the Court finds absolutely no "fair and just" reason to reinstate this presumption and conduct a trial. Accordingly, it is

**ORDERED** that the defendant's motion to withdraw guilty pleas (Docket No. 42) be **DENIED;** and the courtroom deputy be directed to **SCHEDULE** this case for sentencing, if she has not already done so.